Filed 3/30/21  P. v. Trone CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B294933 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA071907) |
| v. | |
| ROBERT L. TRONE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Frank M. Tavelman, Judge.  Affirmed in part, modified in part, reversed and remanded in part.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithy, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted the defendant and appellant Robert L. Trone of three counts of possession of a firearm by a felon in violation of Penal Code section 29800, subdivision (a)(1), one count of false impersonation in violation of Penal Code section 529, subdivision (a)(3), and two counts of unlawful possession of ammunition in violation of Penal Code section 30305, subdivision (a)(1). The jury found the gang allegations under Penal Code section 186.22, subdivision (b)(1)(A) true. At the time of sentencing, appellant admitted the strike prior under the California's "Three Strikes" law and the five year serious felony prior conviction allegation. The trial court sentenced the appellant to 18 years and eight months in prison.

On appeal, the appellant raises three contentions: (1) the trial court improperly denied appellant's request to be represented by a retained counsel of his choice, in violation of the Sixth Amendment Right to Counsel and the Fourteenth Amendment Right to Due process, (2) the unlawful vehicle search violated appellant's Fourth Amendment rights requiring suppression of the evidence, and (3) the federal and state due process clauses require the fines, fees, and assessments imposed by the trial court be stayed because there was no finding appellant had the ability to pay. The appellant and respondent agree the abstract of judgment should be corrected to reflect a conviction assessment of $180 since appellant was only convicted of six counts. We reverse the judgments on Counts 1, 5 and 6 and affirm on Counts 2, 3 and 4.

**FACTUAL AND PROCEDURAL BACKGROUND**

The prosecution's case against the appellant was based on three separate incidents (July 1, 2017, July 13, 2017 and August 24, 2017). The trial commenced on October 18, 2018.

Deputy Alberto Rodriguez of the Los Angeles County Sheriff's Department testified, on July 1, 2017 around 2:30 a.m., he was dispatched to the area of Beech Avenue and Avenue I in the City of Lancaster in the County of Los Angeles to investigate an assault with a firearm call. Upon arrival, he spoke to a witness who pointed at a white car driving from the location and said, "It is that white car. Get him." Deputy Rodriguez turned on his emergency lights and sirens and came upon the white Lexus already pulled over to the side of the street. He found three occupants in the White Lexus including the appellant's girlfriend, Traijah Talley, who was seated in the front passengers seat.

Deputy Rodriguez found several bullet holes on the White Lexus: one in the left rear taillight, three on the front driver's seat area. He found a shell casing on the driver's side floorboard as well as 11 shell casing on the ground on Beech Avenue.

The front passenger, Talley, testified under a grant of immunity. Talley identified the appellant as a member of the Pasadena Denver Lanes gang. She and the appellant, along with Talley's sister and a friend, had gone to a club earlier that night and left after the appellant was punched in the face. Talley testified, appellant initially got into the Lexus but was out by the time the shooting occurred.

Just prior to the shooting, Talley's sister drove by in a black Camaro. The shooter was in another vehicle, gold in color, which came right after the sister's car drove by. Talley testified, when the gold car shot at them, the three in the Lexus hid on the floor.

An independent witness named Steven Thompson testified, he saw a black Dodge Charger and a silver Lexus driving by his location where he was drinking beer with friends. He then saw a gold Malibu. Thompson saw the Malibu shoot at the Lexus. He

believed the Lexus shot back because some bullets came in his direction.

A ballistics expert testified for the prosecution. The 11 casings found on Beech Avenue were compared to results of scientific testing conducted on a Heckler & Koch pistol found inside appellant's car trunk on July 13, 2017. Of the 11 casings the expert compared to the casings fired through the recovered Heckler & Koch pistol, the toolmarks of six matched the casings shot from that pistol.

Deputy Ulise Ruiz of the Los Angeles County Sheriff's Department testified, on July 13, 2017 around 11:15 p.m., he, along with his partner, were patrolling the area of Genoa Avenue and Milling Street in a marked patrol car. He saw a four-door sedan leave a gas station without turning on its lights. Deputy Ruiz conducted a traffic stop and found appellant was the driver. Appellant's girlfriend, Talley, was in the front passenger seat while two of appellant's friends were in the back seat.

Ruiz obtained Talley's permission to look through her phone. Deputy Ruiz saw a photo of the appellant holding a gun. He also saw a picture of appellant holding a gun on Talley's Instagram account.

Deputy Ruiz searched the car and found a pair of gloves and a ski mask in the rear passenger seat. In the trunk of the car, he also found a loaded Heckler & Koch pistol with 12 rounds in the magazine. In the same trunk, he found a sock containing 14 live rounds. Appellant told Deputy Ruiz he knew nothing about the gun or the gloves and ski mask. At the time of booking, appellant told law enforcement his name was Marcus Trone, who is appellant's brother.

4

Deputy Parker Driscoll of the Los Angeles County Sheriff's Department testified, on August 24, 2017 around 7:00 p.m., he, along with his partner, were patrolling the area of Division Avenue and Avenue H in the City of Lancaster. He saw a Ford four-door sedan with an expired license plate. As Deputy Driscoll activated the lights to conduct an investigation, the Ford failed to immediately stop. Instead, he saw an object that resembled a gun tossed from the right rear passenger's window. As the car stopped, the rear passenger ran from the car. Deputy Driscoll found a handgun in the back seat of the car.

When arrested, the appellant waived his Miranda rights and gave interviews on July 14, 2017 and on August 25, 2017. Both interviews were audio recorded and played for the jury. In the July 14, 2017 interview, the appellant admitted he purchased the Heckler & Koch pistol located in the car's trunk in Las Vegas. In the August 25, 2017 interview, the appellant denied knowing anything about the handgun that was thrown out of the window, or, the handgun recovered on the backseat.

The prosecution called Sergeant Anthony Delia as their gang expert. He testified concerning the history and membership of the Pasadena Denver Lanes. Sergeant Delia opined appellant is a Pasadena Denver Lane gang member. He further opined possession of a firearm by a gang member benefits the gang because gangs commit crimes of opportunity.

Concerning the element of the prior conviction for the Penal Code section 29800, subdivision (a)(1) counts, the parties stipulated the appellant suffered a felony conviction on September 28, 2007.

On October 31, 2018, the jury convicted the appellant on all charged counts finding the gang allegation true (except for the

false impersonating charge where the gang allegation was not alleged).

On November 5, 2018, the appellant admitted the strike prior alleged pursuant to the California Three Strikes law (Penal Code, §§ 667, subd. (b)-(i), 1170.12, subd. (a)-(d)) as well as the five-year prior alleged pursuant to Penal Code section 667, subdivision (a). He was sentenced on the same day to a term of 18 years eight months in state prison. The trial court selected count 1 as the principal term. It imposed the upper term of three years doubled pursuant to the Three Strikes law for six years. The trial court further imposed the high term of four years on the gang enhancement and added the five years on the Penal Code section 667, subdivision (a) prior conviction enhancement for a term of 15 years in state prison as the principal term. The trial court imposed counts 2 and 3 consecutively, applying the one-third the middle term rule (eight months on both counts) doubled because of the strike prior to a term of 16 months each. On count 3, the court further added an additional one year for the gang enhancement. The subordinate term thus consisted of 44 months, which equals three years and eight months. Finally, the trial court stayed the punishment on counts 4, 5 and 6 pursuant to Penal Code section 654, imposing the upper term of three years, doubled pursuant to the strike prior. On the same day, the appellant filed a timely notice of appeal.

## DISCUSSION

## I.     The Sixth Amendment Right to Counsel Claim

Appellant claims the judgment must be reversed because the trial court improperly denied appellant's request to be represented by retained counsel of his choice in violation of the

6

Sixth Amendment Right to Counsel and the Fourteenth Amendment Right to Due Process.  We disagree.

### A.    Relevant Proceeding

The initial information was filed on September 22, 2017 alleging charges resulting from the July 13, 2017 and the August 24, 2017 incidents.[1]  On April 26, 2018, about seven months after the filing of the information, the appellant filed a Pitchess motion to uncover potential past police misconduct for impeachment purposes.  On May 21, 2018, the appellant next filed a motion to suppress under Penal Code section 1538.5 for an alleged violation of his search and seizure rights under the Fourth Amendment to be heard on June 20, 2018.  On June 20, 2018, the trial court heard and denied the suppression motion. On the same day, the trial court set the matter for trial as 0 of 10 for trial.

By July 16, 2018, the prosecution had filed the July 1, 2017 incident as a separate case under case No. MA073033.  The trial court granted the prosecution's request to consolidate the information filed on September 22, 2017 with the new case for the July 1, 2017 incident.  The trial court thereafter placed the matter on July 30, 2017 in the master-calendar for trial court assignment with a three day trailing period as 7 of 10 for trial. On July 30, 2018, the master-calendar assigned the consolidated

---

[1]    The initial information charged the appellant with four offenses:  Count 1 Penal Code section 29800, subdivision (a)(1) for July 13, 2017 incident, Count 2 Penal Code section 529, subdivision (a)(3) for July 13, 2017, Count 3 Penal Code section 29800, subdivision (a)(1) for August 24, 2017 incident, Count 4 Penal Code section 30305, subdivision (a)(1) for August 24, 2017 incident.

7

case to Judge Frank Tavelman on August 9, 2018 for trial. The appellant agreed to the next court-date as 6 of 10 for trial.

On August 2, 2018, in preparation to preside over the jury trial, Judge Tavelman discussed with the defendant a motion *in limine* by the prosecution to admit gang evidence in the trial. A question concerning filing gang allegations came up. Judge Tavelman discussed how the prosecution could not do so because it was post-prelim, meaning the predicate gang evidence necessary to plead a Penal Code section 182.66 gang allegation was not introduced at the preliminary hearing. The prosecution and the appellant agreed to a Penal Code section 1387.2 procedure, where the current information would be dismissed, the current information would substitute as the new information, and the case deemed refiled without going through another preliminary hearing.[2] The appellant expressly agreed to a section 1387.2 procedure. Based on Penal Code section 1382, a new 60-day period began on that date. With the parties' input, Judge Tavelman put the case over to September 13, 2018 as 42 of 60 for trial.

On September 13, 2018, Judge Kathleen Blanchard presided over the pretrial conference. The defendant waived time postponing his statutory speedy trial right which would have

---

[2]     Penal Code section 1387.2 provides:
"Upon the express consent of both the people and the defendant, in lieu of issuing an order terminating an action the court may proceed on the existing accusatory pleading. For the purposes of Section 1387, the action shall be deemed as having been previously terminated. The defendant shall be rearraigned on the accusatory pleading and a new time period pursuant to Section 859b or 1382 shall commence."

come due on October 1, 2018 to October 15, 2018 as 7 of 10 for trial. The trial court also ordered the prosecution to provide all discovery for gang related evidence by the end of the next day, September 14, 2018.

On Monday October 15, 2018, as the 7 of 10 date for a jury trial, Judge Tavelman, the originally assigned trial judge, called the case to handle motions *in limine* on issues pertinent to the trial, including a request to bifurcate the prior conviction allegations. The trial was to start on the following Thursday October 18, 2018 as the "last day" for trial.

The trial court began the hearing with a discussion about (1) bifurcating the strike priors, (2) stipulating to a prior conviction necessary for proving the appellant violated Penal Code section 29800, subdivision (a)(1) counts, (3) Fifth Amendment concerns for several witnesses, and (4) scheduling of trial based on the court's availability.

After discussing these issues, the trial court took up the appellant's request for a continuance: "The Court: . . . Mr. Lewis,[3] you mentioned something in chambers, that Mr. Trone may be asking for a continuance to -- to get private counsel. That is something you had brought up.

"Mr. Lewis: Yes, that was brought up. [¶] He did want to know if he could continue his case so he could have time to hire private counsel.

"The Court: It looks like on September 13, 2018, Judge Knight had heard the matter and set it for October 15, 2018, with no further continuances. So it looks like at that point, he had

---

[3] Deputy Public Defender Maceo Lewis appellant's trial counsel.

over a month in which to get private counsel lined up on the case. [¶] Is there a reason why he didn't do that at that point?

"The Defendant: At the time – at the time, I didn't know. They talking about 38 years now. Because at first, they weren't talking about 38 years. [¶] That is my life. You feel me? [¶] I'm out of jail. I'm not getting trouble. I'm trying to find a job and get my life in order, and this is a major setback for me.

"The Court: I understand.

"The Defendant: I think I need more legal advice and a little more help dealing with this matter because it is my life.

"The Court: First of all, we need to correct the 38 years is a miscalculation. It is not much better, but a little better, 25 years 8 months, approximately. [¶] But at this point, because Judge Knight had said it was no further continuances and the fact that this is a refiling, the Court is not inclined to delay the matter further. [¶] So your request for a private counsel, unless you'll be able to start on Thursday, is going to be denied as not being timely."

The record shows appellant was out of custody on bail throughout the proceedings, including the trial.

### B. Legal Principles

A defendant's request for a continuance to seek private counsel is reviewed under the abuse of discretion standard. (*People v. Pigage* (2003) 112 Cal.App.4th 1359, 1367.) Appellant cites us to *U.S. v. Gonzalez-Lopez* (2006) 548 U.S. 140, which discussed the "structural error" standard when a trial court deprives a defendant his counsel of choice, but *Gonzalez-Lopez* was not a case involving a request to continue to find private counsel. Rather, the district court denied the defendant's request to substitute counsel who was already identified and available.

10

The structural error rule enunciated in *Gonzalez-Lopez* is not controlling.

"In reviewing any order or judgment we start with the presumption that the judgment or order is correct, and if the record is silent we indulge all reasonable inferences in support of the judgment or order." (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 299.)

"We have explicated the concept of judicial discretion on innumerable occasions and in a variety of factual contexts. Obviously the term is a broad and elastic one [citation] which we have equated with 'the sound judgment of the court, to be exercised according to the rules of law.' [Citation.] We have also declared that the 'only limitation that the law had placed upon the exercise of discretionary judicial power is, that it must not be abused' [Citation]." (*People v. Russel* (1968) 69 Cal.2d 187, 193-194, superseded by statute on another ground as stated in *People v. Anderson* (2001) 25 Cal.4th 543, 575.) "The abuse of discretion standard . . . reflects the trial court's superior ability to consider and weigh the myriad factors that are relevant to the decision at hand. A trial court will not be found to have abused its discretion unless it 'exercised its discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice.' [Citation.]" (*People v. Roldan* (2005) 35 Cal.4th 646, 688, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

**C.    Analysis**

Appellant claims the trial court did not make an informed decision but based its decision on a prior judge's order of no further continuance. We disagree.

In the instant case, the record shows Judge Tavelman first handled the case when the master-calendar assigned the case to his courtroom for trial back in August of 2018. The record shows he was aware of legal issues that may come up in the trial including the introduction of gang evidence. He explained the advantage and disadvantage of stipulating to a Penal Code section 1387.2 procedure for refiling by noting the advantage of keeping the current bond, and, getting to trial sooner. When Judge Tavelman again took up handling appellant's trial on October 15, 2018, he possessed historical knowledge of the case from more than two months prior.

Judge Tavelman's question to trial counsel reveals his thought process when he asked, "So it looks like at this point, he had over a month in which to get private counsel lined up on the case. Is there a reason why he didn't do that at that point?" This is not a question posed by a trial court who has already made up its mind. Rather, Judge Tavelman asked a pinpoint question relevant to the use of his discretion on whether good cause existed to grant the continuance. He knew the appellant was out of custody physically unhindered from making efforts to hire private counsel.

The appellant failed to adequately answer this question. Instead, he talked about why he wanted to obtain private counsel, that he was out of jail, staying out of trouble, trying to find a job, and get his life in order. The appellant did not provide the court with information on efforts to obtain private counsel, the availability of funds or assistance from family members to hire private counsel, or any time frame needed to find private counsel.

12

Penal Code section 1050, subdivision (e) states, "Continuances shall be granted only upon a showing of good cause." Judge Tavelman's question attempted to discern whether good cause existed. When deciding upon the question of whether or not to grant a continuance, the trial court necessarily focuses on time frames and past efforts to resolve the issue necessitating the request to continue. This was the gist of Judge Tavelman's question. The appellant gave no information on either time frame or past efforts. In short, the appellant gave no information for Judge Tavelman to weigh and consider in terms of considering good cause.

Appellant cites *People v. Byoune* (1966) 65 Cal.2d 345 (*Byoune*) for the proposition that filing additional enhancements provided sufficient justification for the defendant to request to continue. However, the *Byoune* court noted that there are no mechanical tests for deciding whether a court abuses its discretion when denying a motion to continue, but that, instead, the answer is found in the circumstances present in each case and the reasons given to the trial court at the time the request is denied. (*Id.* at p. 347.)

In *Byoune*, the prosecution added a second degree robbery charge a day before trial was to start. In contrast, in the instant case, when the defendant sought the motion to continue, more than two months had passed since the gang enhancements were added. Unlike *Byoune*, the appellant had ample time to find and retain private counsel. Judge Tavelman did not abuse his discretion. Instead, he properly denied the last-minute request for a continuance because the proponent of the request failed to adequately give reasons to establish good cause.

## II. Denial of the Motion to Suppress

Appellant contends the vehicle search conducted on July 13, 2017 was unlawful in violation of his Fourth Amendment right against unlawful searches and seizures requiring suppression of the evidence because the odor of marijuana alone did not provide probable cause for the warrantless search. On this, the appellant appears to make a two-fold contention – first, with the passage of Proposition 64, the odor of marijuana alone no longer provides probable cause to search, and second, the facts adduced at the suppression motion do not support a finding of probable cause. We agree on both grounds.

### A. Relevant Proceedings

Appellant's trial counsel filed the suppression motion on May 21, 2018 seeking to suppress the firearms and ammunition recovered on both July 13, 2017 and August 24, 2017. The trial court conducted the suppression motion on June 20, 2017. In this appeal, appellant only challenges the search of the appellant's vehicle on July 13, 2017.

The prosecution called Deputy Ulise Ruiz to testify. On the evening of July 13, 2017, Deputy Ruiz, along with a partner, worked the burglary suppression team in a patrol vehicle which he drove. Around 11:15 p.m., he observed a vehicle pulling out of a gas station driving without its headlights and rear lights. He conducted a traffic stop. As Deputy Ruiz approached the vehicle, he noticed a strong odor of marijuana emanating from the vehicle. Deputy Ruiz was two to three feet away from the vehicle which had its driver's side windows half way down when he smelled the odor of marijuana. He did not see smoke and ultimately found no marijuana in the vehicle. He made contact with the occupants in the vehicle and noticed appellant as the

14

driver. Deputy Ruiz thereafter conducted a search of the vehicle to locate the source of the marijuana odor. As he did so, he located the ski mask and gloves in the back seat, and the firearm and ammunition in the trunk of the vehicle.

## B. Legal Principles - Odor of Marijuana and Probable Cause

With the passage of Proposition 64 which legalized marijuana for personal use, California's legal landscape on what constitutes probable cause to search in the context of the automobile exception to the Fourth Amendment's warrant requirement is under reexamination.

In *People v. Fews* (2018) 27 Cal.App.5th 553 (*Fews*), the defendant contended that marijuana is no longer contraband in California and therefore, courts should not find probable cause on the odor of marijuana alone. In addressing this contention, the *Fews* court disagreed and noted that Proposition 64 continues to deem acts such as driving under the influence of marijuana, or, possessing an open container or packages of marijuana in a vehicle by either the driver or passengers illegal.[4] As such, the *Fews* court noted there was no compelling reason to depart from the holdings in *People v. Strasburg* (2007) 148 Cal.App.4th 1052 (*Strasburg*), and *People v. Waxler* (2014) 224 Cal.App.4th 712 (*Waxler*), decided in the context of the passage of Compassionate Use Act of 1996. (*Fews*, *supra*, at p. 562.) Both *Strasburg* and

---

[4] Health and Safety Code section 11362.3, subdivision (a)(4) provides, "Section 11362.1 does not permit any person to: Possess an open container or open package of cannabis or cannabis products while driving, operating, or riding in the passenger seat or compartment of a motor vehicle, boat, vessel, aircraft, or other vehicle used for transportation."

15

*Waxler* stand for the rule, the odor of marijuana provides probable cause to search.

In *Waxler*, the court explained, "California courts have concluded the odor of unburned marijuana or the observation of fresh marijuana may furnish probable cause to search a vehicle under the automobile exception to the warrant requirement. [Citations.]" (*Waxler*, *supra*, 224 Cal.App.4th at p. 719.) The *Fews* court concluded, "[t]he continuing regulation of marijuana leads us to believe that *Strasburg* and *Waxler* still permit law enforcement officers to conduct a reasonable search to determine whether the subject of the investigation is adhering to the various statutory limitations on possession and use, and whether the vehicle contains contraband or evidence of a crime. [Citations.]" (*Fews*, *supra*, 27 Cal.App.5th at pp. 562-563.)

Several recent appellate cases have distinguished *Fews* on its facts and invalidated automobile searches based on the observation of legal amount of marijuana, or the mere smell of marijuana, as probable cause for the search. (See *People v. Lee* (2019) 40 Cal.App.5th 853, 866 [possession of legal amounts of marijuana on a person did not provide inference that the car contained contraband]; *People v. Shumake* (2019) 45 Cal.App.5th Supp.1, 7-8 [possession of 1.14 grams of marijuana in a closed plastic tube found in the center console was legal]; *People v. McGee* (2020) 53 Cal.App.5th 796, 803 ["mere presence of a legal amount of marijuana, without more, cannot establish probable cause"]; *People v. Johnson* (2020) 50 Cal.App.5th 620, 632 (*Johnson*) ["a container or package must be open when found in the car, and not merely have the potential to be opened or have previously been opened, to violate section 11362.3, subdivision (a)(4)"]; and *People v. Hall* (2020) 57 Cal.App.5th 946, 954-958

16

*(Hall)* [a plastic baggie of marijuana, without additional testimony from the officer about the state of the baggie was insufficient to establish the baggie was an open container].)

The *Johnson* court held, "the odor of marijuana alone no longer provides an inference that a car contains contraband because individuals over the age of 21 can now lawfully possess and transport up to 28.5 grams of marijuana." (*Johnson, supra,* 50 Cal.App.5th at p. 634.)

In *Johnson*, the appellant was observed in a parked car which had expired registration tags. When the officers attempted to investigate, the appellant got out of the car and refused to go back in. A struggle ensued and the appellant was ultimately arrested for resistance and placed in the patrol vehicle. As the officer approached the vehicle to conduct a "tow inventory search," he smelled the odor of marijuana once he got into the car. The officer found a knotted baggie of marijuana, about two grams worth. The officer continued to search and found a loaded handgun in the rear cargo area of the car. (*Johnson, supra,* 50 Cal.App.5th at pp. 623-624.) Appellant filed a motion to suppress at the preliminary hearing, which was denied. He renewed his motion after the holding order, which again was denied. The *Johnson* court reversed.

It reasoned, the Proposition 64 legalized the possession of marijuana for personal use and undercuts the probable cause analysis in *Waxler* and *Strasburg*. This is so because the voter's enacted Health and Safety Code section 11362.1, subdivision (c) which provides, "[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure, and no conduct deemed lawful by this section shall constitute the basis for detention, search, or

17

arrest." "Now that individuals age 21 or older may lawfully possess and transport up to 28.5 grams of marijuana, evidence of marijuana in a car does not provide certainty the car contains contraband as it did when *Waxler* was decided." (*Johnson, supra*, 50 Cal.App.5th at p. 629.)

*Hall , supra*, 57 Cal.App.5th 946, reached a similar result. In *Hall*, officers observed a car being driven with a nonoperational license plate lamp and stopped the car to investigate. Appellant was the driver. When one of the officers looked into the car, he observed a clear plastic baggie with green leafy substance resembling marijuana. He also saw in the cup holder, an ashtray filled with ashes, burnt cigar wrappers, commonly used to wrap marijuana as well as green leafy substance on the appellant's lap. The officer did not see any smoke in the car, did not smell the wrapper, and was not asked whether any odor of marijuana emanated from the car. The officers decided to search the car for an open container violation based on the presence of the baggie of marijuana in the car. (*Id.* at pp. 949-950.) At the preliminary hearing, the appellant moved to suppress which the trial court denied on the ground, "persons are not permitted to possess open containers of cannabis or cannabis products or to smoke or ingest cannabis or cannabis products while driving." (*Id.* at p. 950.) Appellant moved to set aside the information renewing his argument that the search was illegal which the trial court denied. (*Ibid*.)

The *Hall* court reversed. In so doing, it noted, "[w]e agree with the many appellate courts that have concluded *Waxler* and *Strasburg* are of little persuasive value because they predate the enactment of Proposition 64 and, in particular, section 11362.1(c), which fundamentally changed the probable cause

18

determination. . . ." (*Hall, supra*, 57 Cal.App.5th at p. 954.) *Hall* recognized *Fews* was decided after the effective date of Proposition 64 but distinguished the result based on factual differences. (*Id.* at p. 955.)

In making the distinction, the *Hall* court noted that in *Fews,* the "officers observed an SUV with expired registration being driven in a suspicious manner; the driver failed to comply with officer commands and had a half-burnt rerolled cigar that an officer believed contained marijuana; officer smelled ' "recently burned marijuana emanating from" ' both the driver and the SUV; and the passenger, defendant Fews, made ' "furtive" movements,' continuously moving his lower body and fidgeting inside the SUV. [Citation.]" (*Hall, supra*, 57 Cal.App.5th at p. 955.)

Ultimately, the *Hall* court held there was no substantial evidence the plastic bag was an open container because the officer "offered no description of the state of the plastic baggie." (*Hall, supra*, 57 Cal.App.5th at p. 957.)

When the voters passed Proposition 64, they legalized most but not all personal use or possession of marijuana. The voter's enacted Health and Safety Code section 11362.3, subdivision (a)(4) which makes illegal the possession of an open container or package of marijuana in a vehicle. Additionally, Health and Safety Code section 11362.1, subdivision (a)(1) permits a person to possess not more than 28.5 grams of cannabis that is not concentrated. Health and Safety Code section 11357, subdivision (b)(2), makes illegal possessing more than 28.5 grams of marijuana or more than eight grams of concentrated cannabis by persons 18 years old or older. This crime is a misdemeanor and persons found guilty may be jailed up to six months.

We agree with *Johnson* and *Hall* that Proposition 64 has fundamentally changed the calculus for determining probable cause in the context of an automobile search diminishing the persuasive value of *Waxler* and *Strasburg*.  We also agree with *Johnson,* the mere odor of marijuana, without more, is insufficient to establish probable cause.  Of course, as noted in *Hall* when distinguishing *Fews*, non-smell related indicia of criminality may buttress the "odor" evidence to establish probable cause.  Just as there are multitude of ways human affairs can turn out, there are many ways probable cause can be established.

### C.    De Novo Review

"On appeal from a denial of a motion to suppress evidence on Fourth Amendment grounds we review the historical facts as determined by the trial court under the familiar substantial evidence standard of review.  Once the historical facts underlying the motion have been determined, we review those facts and apply the de novo standard or review in determining their consequences.  Although we give deference to the trial court's factual determinations we independently decide the legal effect of such determinations.  [Citation.]"  (*People v. Esayian* (2003) 112 Cal.App.4th 1031, 1038.)

The facts adduced at the hearing establish, when Deputy Ruiz first saw appellant's vehicle, neither the front nor rear lights of the vehicle were lit at 11:00 o'clock in the evening.  Deputy Ruiz noticed a strong odor of marijuana from the vehicle when he was two to three feet away.  The prosecutor did not ask any questions concerning the nature of the odor, other than that it was strong.  Deputy Ruiz did not testify as to the nature of the area, whether it was known for drug sales or other criminal

20

activity.  He offered no testimony about the appellant whether he was acting furtively, wore certain types of clothing, or was acting suspiciously.  In short, the only probable cause to search was based on the mere odor of marijuana.  Deputy Ruiz's testimony did not establish probable cause.  As such, the trial court's denial of the motion to suppress must be reversed.

## III.   IMPOSITION OF FINES AND FEES

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), appellant contends the federal and state due process clauses require the fines, fees and assessments imposed by the trial court be stayed because there was no finding appellant had the ability to pay.  Respondent counters, the appellant forfeited the imposition of the restitution fine because he failed to object and raise the ability to pay provision under Penal Code section 1202.4, subdivision (c).  As for the other two assessments, the respondent claims any error by the trial court's failure to consider ability to pay was harmless beyond a reasonable doubt.

At the time of judgment, the trial court imposed:  (1) a restitution fine pursuant to Penal Code section 1202.4, subdivision (b) in the amount of $1,000, (2) a court operation assessment pursuant to Penal Code section 1465.8, subdivision (a)(1) in the amount of $240, and (3) a criminal conviction assessment pursuant to Government Code section 70373, subdivision (a)(1) in the amount of $540.  Appellant concedes his trial counsel did not object to the imposition of the restitution fine and the two assessments at the sentencing.

### A.   Forfeiture

In *People v. Frandsen* (2019) 33 Cal.App.5th 1126 (*Frandsen*), we previously held failure of trial counsel to object to the imposition of the restitution fine under Penal Code section

21

1202.4, subdivision (b), and the assessments under Penal Code section 1465.8 and Government Code section 70373 forfeits the claim on appeal. "The concept of forfeiture for failure to raise ability to pay fines, fees or assessments is well established in our case law prior to *Dueñas*. Some of the cases include *People v. Aguilar* (2015) 60 Cal.4th 862, 864 [182 Cal.Rptr.3d 137, 340 P.3d 366]; *People v. Trujillo* (2015) 60 Cal.4th 850, 853-854 [182 Cal.Rptr.3d 143, 340 P.3d 371]; *People v. Nelson* (2011) 51 Cal.4th 198, 227 [120 Cal.Rptr.3d 406, 246 P.3d 301]; and *People v. Avila* (2009) 46 Cal.4th 680, 729 [94 Cal.Rptr.3d 699, 208 P.3d 634]." (*People v. Keene* (2019) 43 Cal.App.5th 861, 864.)

Citing *People v. Yeoman* (2003) 31 Cal.4th 93, appellant asserts despite the failure to object, the issue is cognizable on appeal because it raises a pure question of law. (*Id.* at p. 118.) The appellant in *Frandsen* raised the same contention. We said, "Frandsen asserts there was no forfeiture because he presents a purely legal claim that can be raised for the first time on appeal. Contrary to his assertion, he does not present a pure question of law based on undisputed facts. [Citation.] Rather, he requests a factual determination of his alleged inability to pay based on a record that contains nothing more than his reliance on appointed counsel at trial." (*Frandsen, supra*, 33 Cal.App.5th at p. 1153.) This reasoning equally applies to our case. We see no reason to depart from our holding in *Frandsen*.

B.    **Ineffective Assistance of Counsel**

Appellant next asserts trial counsel's failure to object to the trial court's imposition of fines and fees deprived him effective assistance of counsel.

To obtain relief on appeal for ineffective assistance of counsel, the appellant must establish (1) that his counsel's

performance was so deficient that it amounted to a failure to function as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficiency prejudiced the outcome. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); and see, e.g., *People v. Pensinger* (1991) 52 Cal.3d 1210, 1252.) An attorney's performance is deficient under *Strickland* when his conduct falls below objective standards of reasonableness under prevailing professional norms. (*Strickland*, *supra*, at p. 688.) Prejudice under *Strickland* is established where there is a reasonable probability that, absent counsel's alleged errors, the outcome of the proceeding would have been different. (*Id*. at p. 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid.*)

Here, appellant bears the burden to establish ineffective assistance on both deficient performance and prejudice. (*Strickland*, *supra*, 466 U.S. at p. 690.) The silent record, as here, does not establish either prong of the *Strickland* test. Concerning ineffective assistance of counsel claims on a silent record raised on appeal, the California Supreme Court has explained unless counsel was asked for an explanation and failed to answer, or there simply cannot exist a satisfactory explanation, claims on appeal are to be rejected. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) Here, we have no way to discern why trial counsel failed to object and request an ability to pay hearing. As such, on this appeal, we reject appellant's claim of ineffective assistance.

23

## DISPOSITION

The parties agree the abstract of judgment incorrectly reflects imposition of $540 for the trial court's Government Code section 70373 assessment instead of $180. We agree and order the trial court to correct the abstract of judgment to reflect the proper amount. Judgments on Counts 1, 5 and 6 are reversed. The matter is remanded to the trial court with directions to set aside its order denying the motion to suppress, enter a new order granting the motion, and conduct further proceedings consistent with this opinion. Judgments on Counts 2, 3 and 4 are affirmed.

OHTA, J.[*]

We concur:

GRIMES, Acting P. J.

WILEY, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.