Filed 1/18/22  P. v. Allen CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,  Plaintiff and Respondent,  v.  SAMMY VANJEWEL ALLEN,  Defendant and Appellant. | D077563  (Super. Ct. No. SCD282882) |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater and Runston G. Maino, Judges.  Affirmed in part, reversed in part, and remanded for resentencing.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

# I

# INTRODUCTION

Defendant Sammy Vanjewel Allen appeals a judgment of conviction after he pleaded guilty to unlawful possession of a firearm (Pen. Code,[1] § 29820; count 1) and unlawful possession of ammunition (§ 30305, subd. (a)(1); count 2). The trial court placed the defendant on formal probation for a period of three years with 270 days of local custody.

The defendant claims the trial court erred by: (1) denying a motion to suppress evidence obtained in violation of his Fourth Amendment rights; and (2) imposing a probation condition requiring him to submit his cell phones and electronic devices to warrantless searches at any time. He also argues he is entitled to a remand and resentencing based on the recent enactment of Assembly Bill No. 1950 (2019–2020 Reg. Sess.), which limits felony probation terms to a maximum of two years. Further, he claims a $154 criminal justice administration fee (Gov. Code, § 29550.1) should be stricken from the sentence due to the recent passage of Assembly Bill No. 1869 (2019–2020 Reg. Sess.).

We agree with the defendant that the trial court erred by imposing a probation condition requiring him to submit his cell phones and electronic devices to warrantless searches. We also agree with the defendant that he is entitled to remand and resentencing in light of Assembly Bill No. 1950. Additionally, we conclude the judgment must be vacated, in part, as to any criminal justice administration fee that was unpaid as of July 1, 2021. However, we reject the defendant's argument concerning the motion to suppress, and affirm the judgment in all other respects.

---

[1] Further undesignated statutory references are to the Penal Code.

## II

## BACKGROUND

### A

### *Factual Background*

The following factual background section is drawn from the trial court's factual findings and the evidence elicited at the preliminary hearing. (See *People v. Turner* (2017) 13 Cal.App.5th 397, 400.)

Late one afternoon, police officers Timothy Arreola and Kyle Fitzgerald were on patrol in a residential neighborhood. They were monitoring a pool party where known gang members were present.

The officers drove in a marked patrol unit near the pool party and spotted the defendant approximately 20 to 30 yards in front of them. They observed the defendant peering into the driver side window of a parked vehicle. He was using both his hands to shield his eyes from the sun as he peered into the vehicle. The vehicle was not running, there was nobody inside the vehicle, and there were no keys visible in the defendant's hands.

When the defendant saw the patrol unit, he stepped away from the vehicle and walked in the middle of the street towards the patrol unit. As he did so, officer Arreola noticed the defendant had several tattoos. One tattoo on the defendant's neck read "Park Boy," which officer Arreola believed was a reference to the Lincoln Park criminal street gang. Officer Arreola also noticed the defendant had a black satchel in his hand. Officer Arreola knew from his eight years of experience as a peace officer that criminals sometimes conceal firearms in satchels. He personally had seized several firearms from satchels resembling the one carried by the defendant.

When the defendant was parallel to the patrol unit, officer Arreola parked and exited the patrol unit, and told the defendant, "Come over here."

3

He then asked the defendant whether the parked vehicle was his car. The defendant responded that it was his mother's car. The defendant was within three feet of officer Arreola when the encounter was initiated.

Officer Arreola took the satchel and a cell phone from the defendant and told him to put his hands behind his back and separate his legs. He held the defendant's wrists behind his back and asked the defendant for his name, which he provided. Officer Arreola recognized the defendant's name and believed he was a member of the Lincoln Park gang.

Officer Arreola placed the satchel and cell phone on the hood of the patrol unit and handcuffed the defendant. As he held the satchel, he noticed the satchel was heavy. According to officer Arreola, it felt like a firearm was inside the satchel. One minute and 29 seconds elapsed from the start of the encounter to the point officer Arreola formed a belief that a gun was inside the satchel.

Officer Arreola obtained the defendant's identification card with his consent and handed it to officer Fitzgerald to run an electronic record check on the defendant's name. He then reported the contact with the defendant to police dispatch.

Officer Arreola asked the defendant whether there was anything illegal in the satchel and the defendant replied no. The defendant asked officer Arreola: "Y'all thought I stole that car or something?" In response, officer Arreola said the defendant "looked kinda' weird" peering into the vehicle. The defendant stated he was looking to see if he left his sweater inside.

Officer Arreola asked the defendant what was in the satchel and he responded there was a "weed roller" inside. Officer Arreola asked the defendant for permission to open the satchel and the defendant refused. Officer Arreola manipulated the satchel from the outside, felt a hard, L-

4

shaped object inside the satchel, and confirmed his belief that the satchel contained a gun.

Officer Arreola performed a pat-down search of the defendant and completed a field interview to document the stop. Soon after, backup officers arrived and ran an electronic search for the license plate of the vehicle into which the defendant had been peering.

Officer Arreola unzipped the satchel and seized a loaded firearm and a laser aiming scope. The record check on the defendant's name revealed he was a felon. The license plate search revealed the parked vehicle belonged to someone who lived at the address shown on the defendant's identification card.

## B

### *Procedural Background*

The defendant was charged with one count of unlawful possession of a firearm and one count of unlawful possession of ammunition.

Prior to the preliminary hearing, the defendant moved to suppress the evidence obtained during his encounter with the officers. He argued the evidence was the result of an unreasonable search and seizure that violated his Fourth Amendment rights.

At the preliminary hearing, the defendant argued the officers violated his Fourth Amendment rights by unreasonably prolonging their detention of him. Alternatively, he claimed the officers' conduct converted the detention into a de facto arrest—specifically, their act of handcuffing him. He asserted the officers did not have probable cause to justify a de facto arrest.

The trial court denied the suppression motion. It found the defendant was not subject to a de facto arrest and, furthermore, the detention was reasonable and not prolonged. Based on officer Arreola's preliminary hearing

5

testimony as well as body worn camera footage of the encounter, the court held the defendant to answer.

The defendant moved to set aside the information under section 995 and renewed his challenge to the constitutionality of the search and seizure. The court found there were no constitutional violations and denied the motion to set aside the information.

Subsequently, the defendant pleaded guilty to the charged offenses and was placed on formal probation for three years with 270 days of local custody.

III

DISCUSSION

A

*Motion to Suppress*

1

The defendant claims the court erred in denying his motion to suppress because officers Arreola and Fitzgerald detained him without reasonable suspicion that he was involved in any criminal conduct.[2]

The People concede the officers detained the defendant "within seconds of making contact" with him. However, they argue the court correctly denied the suppression motion because the officers had reasonable suspicion the defendant was engaged in criminal conduct.

For the reasons discussed below, we agree with the People.

2

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. (U.S. Const., 4th Amend.; U.S. Const.,

---

[2] The defendant no longer asserts the detaining officers subjected him to a de facto arrest without probable cause, or that the detention was excessively and unreasonably prolonged.

6

14th Amend.) Evidence obtained in violation of the Fourth Amendment is inadmissible in a criminal trial. (*People v. Boulter* (2011) 199 Cal.App.4th 761, 768.) " 'A criminal defendant is permitted to challenge the reasonableness of a search or seizure by making a motion to suppress at the preliminary hearing.' " (*People v. Tacardon* (2020) 53 Cal.App.5th 89, 96; see § 1538.5.) " 'If the defendant is unsuccessful at the preliminary hearing, he or she may raise the search and seizure matter before the superior court under the standards governing a section 995 motion.' " (*Tacardon,* at p. 96.)

"A seizure within the meaning of the Fourth Amendment occurs whenever an individual's liberty is restrained by the police, either by physical force or an assertion of authority, to which the individual submits, in circumstances in which a reasonable person would have believed he or she was not free to leave. [Citation.] Distinctions are drawn between 'detentions' and 'arrests,' since, although both are seizures under the Fourth Amendment, the constitutional standard for permissible detentions 'is of lesser degree than that applicable to an *arrest*.' [Citation.] A detention may be undertaken ' "if there is an articulable suspicion that a person has committed or is about to commit a crime" ' [citation], while probable cause for an arrest exists only 'when the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person arrested is guilty of a crime.' " (*People v. Hester* (2004) 119 Cal.App.4th 376, 385–386 (*Hester*).)

Both parties agree the officers detained the defendant. However, they disagree whether the detention was constitutionally valid—i.e., whether the officers had a " 'reasonable, articulable suspicion that criminal activity [was] afoot,' implicating the suspect." (*Cornell v. City & County of San Francisco* (2017) 17 Cal.App.5th 766, 779–780; see *People v. Souza* (1994) 9 Cal.4th 224,

7

231 [a detention requires "specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity"].)

"Reasonable suspicion is a less demanding standard than probable cause and is determined in light of the totality of the circumstances." (*People v. Fews* (2018) 27 Cal.App.5th 553, 560 (*Fews*).) " 'Because it is a "less demanding" standard, "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." [Citation.] The standard "depends on the factual and practical considerations of everyday life on which *reasonable and prudent men*, not legal technicians, act." [Citation.] Courts "cannot reasonably demand scientific certainty … where none exists." [Citation.] Rather, they must permit officers to make "commonsense judgments and inferences about human behavior." ' " (*People v. Silveria* (2020) 10 Cal.5th 195, 236.)

"In reviewing an order on a motion to suppress, we defer to the trial court's factual findings, express or implied, if substantial evidence supports them. We exercise independent judgment in determining whether, on those facts, the police action was reasonable under the Fourth Amendment. [Citation.] We view the evidence in the light most favorable to the order denying suppression, as the familiar rule governing appellate review requires." (*People v. Flores* (2021) 60 Cal.App.5th 978, 988.)

3

Applying these standards, we conclude the trial court properly found there was reasonable suspicion justifying the detention.

The circumstances giving rise to a reasonable suspicion are as follows: (1) the officers spotted the defendant peering into a parked vehicle in a manner consistent with "casing," or car burglary; (2) the vehicle was not

8

running, there was nobody inside the vehicle, and there were no keys visible in the defendant's hands, which could reasonably suggest the defendant was not talking with a companion in the vehicle or entering or exiting the vehicle; (3) the defendant stopped peering into the vehicle when he observed the patrol unit, which could reasonably suggest a guilty conscience; (4) the defendant was in an area where gang members were congregating; (5) the defendant had a tattoo that officer Arreola believed was related to a criminal street gang; (6) officer Arreola observed the defendant carrying a satchel in his hand as he walked in the street towards the patrol unit; and (7) officer Arreola knew some criminals conceal firearms in satchels and he personally had seized several firearms from such satchels. All of these circumstances were known before the officers detained the defendant. Collectively, they gave rise to a reasonable suspicion that the defendant was perpetrating or planning to perpetrate criminal conduct—most likely a car burglary.

The defendant cites case law suggesting that certain of the circumstances just discussed are insufficient, standing alone, to support a finding of reasonable suspicion. (See, e.g., *People v. Bower* (1979) 24 Cal.3d 638, 645 [an area's high-crime rate does not transform "otherwise innocent-appearing circumstances into circumstances justifying the seizure of an individual"]; *Hester, supra*, 119 Cal.App.4th at p. 392 ["Mere membership in a criminal street gang, without additional *facts* supporting an inference of criminal activity, does not permit a detention."].) We do not quarrel with these well-established principles. On the contrary, we agree with them to the extent they suggest some of the circumstances in this case likely would be insufficient, in isolation, to support a reasonable suspicion finding—specifically, the defendant's possible gang membership or affiliation, as well as the fact the encounter took place in a gang-populated area.

9

But we are not considering these circumstances in isolation. Rather, we are considering them with many other pertinent circumstances—most critically, the officers' firsthand observation of the defendant peering into the window of a parked vehicle; the defendant's decision to stop peering into the vehicle immediately upon viewing the patrol unit; and the defendant's clutching of a satchel that, in the detaining officers' experience, was sometimes used to conceal firearms. Further, there is no dispute that the circumstances of a high-crime or high-gang activity area, and the defendant's potential gang membership or affiliation—while not *dispositive*—are certainly *probative* of whether the detaining officers had a reasonable suspicion the defendant was involved in criminal activity. (See *People v. Flores* (2019) 38 Cal.App.5th 617, 630 ["presence in a 'high crime area' is probative, but not sufficient on its own to justify a detention"]; *Fews, supra*, 27 Cal.App.5th at p. 560 [reasonable suspicion existed in part due to the fact the detention occurred in an area known for violent drug-related crime]; accord *In re H.M.* (2008) 167 Cal.App.4th 136, 146 [it is "common knowledge that members of criminal street gangs often carry guns and other weapon"].)

The defendant also argues the officers lacked reasonable suspicion for the detention because there were innocent explanations for his behavior; indeed, he maintains that the parked vehicle at issue belonged to his mother. "However, ' "[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct." ' [Citations.] 'What is required is not the *absence* of innocent explanation, but the *existence* of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." ' " (*People v. Brown* (2015) 61 Cal.4th 968, 985–986, *People v. Daugherty* (1996) 50 Cal.App.4th 275, 287 ["Even if the circumstances are

10

also consistent with innocent activity, a detention will be justified if the combination of circumstances also supports a reasonable suspicion of criminal activity."].) The very "purpose of the detention is to resolve the ambiguity by allowing the officer to briefly investigate further." (*Brown*, at p. 986.) Thus, the existence of an innocent explanation did not preclude a finding that the detaining officers had a reasonable suspicion.

Under the totality of the circumstances, the officers had a reasonable suspicion that the defendant was involved in criminal activity. Therefore, the detention of the defendant was constitutionally permissible, and the trial court correctly denied the motion to suppress.[3]

B

*Assembly Bill No. 1950*

At the time of sentencing, section 1203.1, subdivision (a) provided that a court may impose felony probation "for a period of time not exceeding the maximum possible term of the sentence." It further provided that "where the maximum possible term of the sentence is five years or less, then the period of suspension of imposition or execution of sentence may, in the discretion of the court, continue for not over five years." (Former § 1203.1, subd. (a).)

During the pendency of this appeal, the Legislature enacted Assembly Bill No. 1950, which amended section 1203.1. (Stats. 2020, ch. 328, § 2.) Subject to certain exceptions not applicable here, section 1203.1,

---

[3]    The trial court made a finding that officer Arreola did not physically touch the defendant until he held his wrists behind his back. The defendant challenges the sufficiency of the evidence to support this finding and claims the body worn camera footage shows officer Arreola grabbing the defendant's arm at the beginning of the encounter. We do not decide whether the evidence was sufficient to support the finding because, as the defendant admits, the issue is immaterial to whether the officers had a reasonable suspicion justifying the detention.

11

subdivision (a), as amended, provides that a felony probation term cannot exceed two years. The new law went into effect on January 1, 2021.

Relying on *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), the defendant claims Assembly Bill No. 1950's limitation on the maximum duration of felony probation terms constitutes an ameliorative change to the criminal law that applies retroactively to cases like his own that were not reduced to final judgment as of the new law's effective date. The People agree Assembly Bill No. 1950 applies to non-final cases on appeal.

The parties are correct. The two-year limitation on felony probation is an ameliorative change to the criminal law that applies retroactively to non-final cases including the defendant's case. (See *People v. Czirban* (2021) 67 Cal.App.5th 1073, 1095 (*Czirban*); *People v. Schulz* (2021) 66 Cal.App.5th 887, 892–895; *People v. Lord* (2021) 64 Cal.App.5th 241, 244–246 (*Lord*); *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1070–1074, review granted June 30, 2021, S268787; *People v. Sims* (2021) 59 Cal.App.5th 943, 955–964; *People v. Quinn* (2021) 59 Cal.App.5th 874, 880–885.)

Both parties contend the proper remedy is to remand the matter for resentencing. Once again, we agree. (See *Czirban, supra*, 67 Cal.App.5th at p. 1095; *Lord, supra*, 64 Cal.App.5th at p. 246; *Sims, supra*, 59 Cal.App.5th at p. 964.) Accordingly, we reverse the judgment in relevant part and remand the matter so the trial court may resentence the defendant in accordance with amended section 1203.1, subdivision (a).

C

*Electronics Search Condition*

1

The trial court imposed various conditions of probation including a condition requiring the defendant to submit his cell phones and electronic

12

devices to search at any time, with or without a warrant, and with or without reasonable cause, when requested by a probation officer or law enforcement officer (hereafter, the electronics search condition). The defendant contends the electronics search condition is invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), and unconstitutionally overbroad.

Although we are remanding the matter for resentencing, we address the defendant's challenge to the electronics search condition to provide the trial court with guidance in the interests of judicial economy.

2

"The Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to whether probation is appropriate and, if so, the conditions thereof." (*Lent, supra*, 15 Cal.3d at p. 486.) A court may impose any "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." (§ 1203.1, subd. (j).) "[W]e ' "review conditions of probation for abuse of discretion." ' [Citation.] Specifically, we review a probation condition 'for an indication that the condition is "arbitrary or capricious" or otherwise exceeds the bounds of reason under the circumstances.' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 (*Ricardo P.*).)

In *Lent*, the Supreme Court adopted a three-part test to determine whether a probation condition is reasonable—i.e., whether it is valid under section 1203.1, subdivision (j). Pursuant to *Lent*, a probation condition is reasonable, and thus valid, unless it " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related

13

to future criminality.' " (*Lent, supra*, 15 Cal.3d at p. 486.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)

In *Ricardo P., supra*, 7 Cal.5th 1113, the Supreme Court applied the *Lent* test while assessing the validity of an electronics search condition similar to the one imposed here. In that case, a juvenile defendant admitted two counts of felony burglary and the juvenile court imposed probation conditions including a prohibition against illegal drugs and alcohol, and a condition requiring the defendant to submit to warrantless searches of his electronic devices including his electronic accounts. (*Id.* at pp. 1116–1117.) The defendant objected to the electronics search condition on grounds that it was not reasonably related to future criminality. (*Id.* at p. 1117.) The court overruled the defense objection, reasoning that " 'minors typically will brag about their marijuana usage or drug usage, particularly about their marijuana usage, by posting on the Internet, showing pictures of themselves with paraphernalia, or smoking marijuana. It's a very important part of being able to monitor drug usage and particularly marijuana usage.' " (*Ibid.*)

On appeal, the Supreme Court ruled the electronics search condition was not reasonably related to future criminality because "the burden it impose[d] on [the juvenile defendant's] privacy [was] substantially disproportionate to the countervailing interests of furthering his rehabilitation and protecting society." (*Ricardo P., supra*, 7 Cal.5th at p. 1119.) The Court determined the "sweeping" condition imposed a "very heavy burden on [the] privacy" interests of the juvenile defendant, requiring him to provide officers "full access, day or night, not only to his social media accounts but also to the contents of his e-mails, text messages, and search

14

histories, all photographs and videos stored on his devices, as well as any other data accessible using electronic devices." (*Id.* at pp. 1123, 1124.)

According to the Court, the interests served by the condition were not sufficiently proportionate to the heavy burden the condition imposed. The Court noted, in particular, that "nothing in the record suggest[ed] that [the juvenile defendant] ha[d] ever used an electronic device or social media in connection with criminal conduct." (*Ricardo P., supra*, 7 Cal.5th at p. 1122; see also *id.* at p. 1119 ["there is no suggestion in the record or by the Attorney General that [the juvenile defendant] has ever used electronic devices to commit, plan, discuss, or even consider unlawful use or possession of drugs or any other criminal activity"].) Further, the Court reasoned the state's interest in facilitating supervision of the juvenile defendant did not alone justify the electronics search condition, given the disproportionately "burdensome and intrusive" nature of the condition. (*Id.* at p. 1126.)

Because the electronics search condition was not reasonably related to future criminality, and the remainder of the *Lent* test was presumed to be satisfied, the Supreme Court struck the electronics search condition. (*Ricardo P., supra*, 7 Cal.5th at p. 1129.)

3

Here, the trial court imposed an electronics search condition similar to the one at issue in *Ricardo P.* At sentencing, the court stated it was a "close" call, but nonetheless imposed the condition and opined that "people who are involved with gang activity seem to have a great desire to put this stuff on electronic media." Defense counsel objected based on *Lent* and the court overruled the objection, reasoning that "many gang-involved people post stuff on social media."

15

On appeal, the defendant contends the electronics search condition is impermissible because it satisfies all three prongs of the *Lent* test. The People concede the electronics search condition satisfies the first two prongs, but claim it does not satisfy the third prong. Therefore, the validity of the condition turns on the third prong—i.e., whether the condition is reasonably related to future criminality.

We conclude the electronics search condition is not reasonably related to future criminality and, therefore, it is invalid under the *Lent* test. Like the probation condition in *Ricardo P.*, the electronics search condition at issue here imposes a weighty burden on privacy interests. It requires the defendant to submit his cell phones and electronic devices to warrantless searches, with or without probable cause, at any time, whenever requested by a probation officer or law enforcement officer. Such a condition "significantly burdens privacy interests." (*Ricardo P., supra*, 7 Cal.5th at p. 1123; accord *Riley v. California* (2014) 573 U.S. 373, 393, 394 [the "immense storage capacity" of cell phones means they "collect[] in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record"].)

These heavy burdens are substantially disproportionate to any legitimate interest the state may have in supervising the defendant or ensuring he remains free of gang involvement. There is no indication in the record or the People's brief that the defendant used a cell phone or electronic device in connection with the firearm and ammunition offenses to which he pleaded guilty, or in connection with any other criminal conduct for that matter. Nor is there any indication in the record or the People's brief that the defendant has ever used a cell phone or electronic device in furtherance of any gang-related activities. On this bare record, the trial court's general

16

observation that some gang members "post stuff on social media" is plainly insufficient to justify the heavy burden the electronics search condition imposes on the defendant's privacy interests.

Because there is no evidence supporting a finding that the electronics search condition is reasonably related to the defendant's future criminality, it is invalid under *Lent, supra*, 15 Cal.3d 481, and *Ricardo P., supra,* 7 Cal.5th 1113, and must be stricken. Given this determination, it is unnecessary for us to consider whether the electronics search condition is unconstitutionally overbroad.

D

*Assembly Bill No. 1869*

At the time of sentencing, Government Code section 29550.1, subdivision (a) required courts to order any convicted person who was arrested by a local arresting agency to pay a criminal justice administration fee as a condition of probation. (Former Gov. Code, § 29550.1, subd. (a).) Pursuant to this statutory mandate, the trial court ordered the defendant to pay a criminal justice administration fee of $154.

While the appeal was pending, the Legislature enacted Assembly Bill No. 1869. The stated purpose of the law was to "eliminate the range of administrative fees that agencies and courts are authorized to impose to fund elements of the criminal legal system and to eliminate all outstanding debt incurred as a result of the imposition of administrative fees." (Stats. 2020, ch. 92, § 2; see *id.*, § 1(h) ["Criminal justice fees have no formal punitive or public safety function. Instead, they undermine public safety because the debt they cause can limit access to employment, housing, education, and public benefits, which creates additional barriers to successful reentry."].)

Assembly Bill No. 1869 repealed the statute mandating imposition of a criminal justice administration fee as of July 1, 2021. (Stats. 2020, ch. 92, § 24 [Gov. Code, § 29550.1 "shall remain in effect only until July 1, 2021, and as of that date is repealed, unless a later enacted statute that is enacted before July 1, 2021, deletes or extends that date."].) Additionally, it added section 6111 to the Government Code, effective July 1, 2021. (*Id.*, § 11.) Section 6111 states: "On and after July 1, 2021, the unpaid balance of any court-imposed costs pursuant to Section 27712, subdivision (c) or (f) of Section 29550, and Sections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Gov. Code, § 6111, subd. (a).)

After briefing was complete, the defendant requested permission to file a supplemental brief concerning Assembly Bill No. 1869. We granted the request and permitted both parties to file supplemental briefs regarding the application of Assembly Bill No. 1869.

In his supplemental brief, the defendant argues Assembly Bill No. 1869 is an ameliorative change to the criminal law, which is subject to the *Estrada* presumption of retroactivity. He asserts the law applies retroactively to his case and, therefore, we should strike the $154 criminal justice administration fee in its entirety.

We decline the defendant's request to strike the criminal justice administration fee in whole. As this court recently determined, Government Code "section 6111 indicates a legislative intent to extend the ameliorative changes in the law regarding the imposition of administrative fees to individuals serving both final and nonfinal sentences, *but only to the extent of relieving those individuals of the burden of any debt that remains unpaid on*

18

*and after July 1, 2021.*"  (*People v. Lopez-Vinck* (2021) 68 Cal.App.5th 945, 953, (*Lopez-Vinck*) italics added.)  "By specifying the precise date on which the costs that have been imposed on defendants … become unenforceable and uncollectible, the Legislature made clear that any amounts paid prior to that time need not be vacated, regardless of whether the sentence of the person on whom the costs were imposed is final."  (*Ibid.*)  Thus, it would be improper for us to strike the criminal justice administration fee in full.  (*Ibid.*)

On the other hand, Government Code section 6111 requires us to vacate any portion of a judgment imposing a criminal justice administration fee that was unpaid by July 1, 2021.  (Gov. Code, § 6111, subd. (a); *Lopez-Vinck, supra*, 68 Cal.App.5th at p. 953.)  Accordingly, we vacate the portion of the defendant's judgment concerning the $154 criminal justice administration fee, but only to the extent the criminal justice administration fee was unpaid as of July 1, 2021.

IV

DISPOSITION

The judgment is reversed to the extent it imposes: (1) a term of probation exceeding two years; and (2) a probation condition requiring the defendant to submit to warrantless searches of his cell phones and electronic devices. The portion of the judgment imposing a criminal justice administration fee pursuant to Government Code section 29550.1 is vacated to the extent the fee was unpaid on July 1, 2021. In all other respects, the judgment is affirmed. The matter is remanded for resentencing consistent with the legislative amendments to Penal Code section 1203.1 and Government Code sections 6111 and 29550.1.

McCONNELL, P. J.

WE CONCUR:

HALLER, J.

AARON, J.

20