Filed 9/24/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>CALVIN BERNARD FEWS,<br><br>          Defendant and Appellant. | A151727<br><br>(City & County of San Francisco<br>Super. Ct. No. 227186) |

Calvin Bernard Fews appeals from a conviction following his guilty plea to being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)).  He contends the magistrate erred in denying his motion to suppress evidence seized during a patsearch of his clothing.  We affirm the order denying suppression.

**STATEMENT OF THE CASE**

A felony information charged Fews with possessing (Pen. Code, §§ 29800, subd. (a)(1); count I), concealing in a vehicle (Pen. Code, § 25400, subd. (a)(3); count II), and carrying a loaded firearm (Pen. Code, § 25850, subd. (a); count III)).  The information further alleged that Fews suffered five prior prison terms (Pen. Code, § 667.5, subd. (b)), three prior strikes (Pen. Code, § 667, subds. (d), (e)), and an out-on-bail enhancement (Pen. Code, §12022.1, subd. (b)).

Fews filed a motion to suppress to be heard at the preliminary hearing.  The magistrate denied the suppression motion.  Thereafter, Fews filed a motion to dismiss under Penal Code section 995, arguing the magistrate erroneously denied his motion to suppress at the preliminary hearing (Pen. Code, §§ 1538.5, 995).  In a nonstatutory motion to dismiss, Fews claimed a delay in obtaining police body camera video after the

hearing denied him due process under *Brady v. Maryland* (1963) 373 U.S. 83. The trial court denied both motions.

Fews pleaded guilty to count I, felon in possession (§ 29800, subd. (a)(1)). The court dismissed the remaining charges, suspended imposition of sentence, and placed Fews on three years' probation with a time-served jail condition. Fews timely appeals the superior court's order denying the motion to suppress. (Pen. Code, § 1538.5, subd. (m).)

**STATEMENT OF THE FACTS**[1]

Around 4:00 p.m. on February 8, 2017, San Francisco Police Officers Dominic Vannucchi and John Vidulich were in a marked patrol car on Turk Street in the Tenderloin District when they saw a white Saturn Vue (SUV) in front of their patrol car speed up and then "abruptly" pull over to stop in a red zone in front of a bar at the corner of Turk and Larkin. Based on his experience, Vannucchi believed the abrupt stop by the SUV in front of their police vehicle was done to avoid a traffic stop. After a check on the SUV showed the registration was expired, Vidulich turned on his forward-facing red lights and siren.

The driver of the SUV, Lindell Mims, quickly got out of the car before the officers made contact with him. Vannucchi testified that this increased his suspicions about the occupants of the SUV because in his experience, some drivers have claimed they cannot be stopped if they get out of the vehicle. Vidulich asked Mims multiple times to get back into the SUV, but Mims did not comply. As Vidulich came around the driver's side of the SUV, Mims stood facing the open driver's side door with his hands in the passenger compartment "reaching back into the vehicle," while Fews was in the front passenger seat making "furtive movements around the passenger compartment particularly low on his body," but the officers could not see Fews's hands or what he was doing due to the

---

[1] The facts are drawn from the transcript of the preliminary hearing/motion to suppress. (See Pen. Code, § 1538.5, subd. (i).)

2

SUV's tinted windows. Fews "continuously reached around the compartment" with his hands never rising above the window level, moving "his upper body back and forth multiple times." When Vidulich reached the driver's side of the SUV, Mims turned toward him. Mims now had a set of keys, a plastic cup, a package of Swisher Sweets Cigars, and a half-burnt, flattened, and rerolled cigar. Vidulich smelled the odor of "recently burned marijuana emanating from Mr. Mims and the [SUV]" and believed the cigar contained marijuana, based on the nature in which it was rolled.

Vannucchi stood at the rear of the SUV broadcasting information on the traffic stop to dispatch while watching Mims speak with Vidulich and Fews sitting in the SUV. After completing his broadcast, he approached Vidulich and Mims. Vannucchi recognized from his training and experience that Mims held a half-burnt "blunt," a factory-rolled cigar that is flattened and split to remove tobacco and add marijuana, and then rerolled. He saw Fews "fidgeting" in the passenger seat with "his body moving back and forth and from side to side." Vannucchi asked if there was marijuana in the cigar, and Mims admitted there was marijuana in the cigar.[2] Mims then reached back into the passenger compartment of the SUV a second time despite being told not to by Vidulich, and Vidulich saw Fews continuing to make "furtive" movements within the passenger compartment.

Based on his training and experience, the area of San Francisco they were in, and the noncompliance from Mims, Vidulich believed that Fews could have been reaching for something in the compartment, possibly a weapon. The area surrounding Turk and Larkin is known for narcotics sales and use, and numerous shootings and stabbings in the area were related to narcotics. Active hot spots for drug markets were within two to five

---

[2] According to the preliminary hearing transcript, Vidulich testified that Mims said there was marijuana "in his car." However, the prosecutor later acknowledged that the word "car" may have been a typographical error, perhaps for the word "cigar."

3

blocks of the scene of the traffic stop. Vidulich asked Fews to step out of the vehicle, and Fews complied.

Vidulich then asked Mims to step away from the vehicle and performed a patsearch of Mims. Vidulich intended "to check the vehicle and make sure that both the occupants were in compliance with laws regarding marijuana in California" regarding possession and use, to find documentation for the marijuana, and "to see if there was . . . [any more] marijuana in the vehicle and, if so, if that was within compliance of state law."

When Fews got out of the SUV, the officers saw that he wore multiple layers of baggy clothing, including a large puffy coat. Vannucchi asked Fews if he had guns or knives on him or was on probation or parole, and Fews said no. Vannucchi decided to perform a patsearch of Fews because of the high-crime area they were in, Fews's fidgeting in the vehicle, the possibility that Fews's baggy clothing could conceal a weapon, and the fact that the officers "were going to be conducting a search of the vehicle at which point it would be one officer watching the two subjects and the other officer with his back turned to the vehicle." As Vannucchi patted down Fews's jacket, he felt a hard metal object that he believed to be the butt of a firearm. Fews brought his hand down towards the right-hand pocket area, but Vannucchi used his left hand to move Fews's hand away. Vannucchi then felt into the pocket and recognized the object to be a firearm. The gun was a loaded .32-caliber Beretta semiautomatic gun. Vannucchi handcuffed Fews and directed Vidulich to handcuff Mims.

### *The Magistrate's Ruling on the Suppression Motion*

The magistrate denied Fews's motion to suppress, finding the officers had probable cause to search the SUV under *People v. Waxler* (2014) 224 Cal.App.4th 712, 719 (*Waxler*), which the magistrate noted was "still good law." The magistrate further concluded that Vannucchi's patsearch of Fews was justified for officer safety because while one of the officers was conducting the search, the other officer would be

4

outnumbered by the detainees. Additionally, the magistrate cited Fews's baggy clothes, fidgeting, and the high-crime area in which the traffic stop took place as factors supporting the legality of the patsearch of Fews.

## DISCUSSION

Fews contends the patsearch was not supported by reasonable suspicion that he was armed and dangerous, as required under the Fourth Amendment. Fews argues the justification for the patsearch was officer safety during the intended search of the SUV, but there was no probable cause to search the vehicle based merely on the odor of marijuana and the officers' knowledge of a small amount of marijuana in Mims's possession, because a small amount of marijuana is no longer illegally possessed nor considered "contraband" after the passage of the Control, Regulate and Tax Adult Use of Marijuana Act, Proposition 64, adopted by voters on November 8, 2016.[3] Because the vehicle search was invalid, Fews argues, the patsearch was likewise invalid.

### I.    Standard of Review

"The Fourth Amendment of the federal Constitution requires state and federal courts to exclude evidence obtained from unreasonable government searches and seizures. [Citation.] Penal Code section 1538.5 allows a defendant to move to suppress evidence obtained in an improper seizure. [Citation.] Our standard of review 'is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the

---

[3] Among other things, Proposition 64 added Health and Safety Code section 11362.1 (section 11362.1), which provides that "it shall be lawful under state and local law, and shall not be a violation of state or local law, for persons 21 years of age or older to: [¶] . . . [p]ossess, process, transport, purchase, obtain, or give away to persons 21 years of age or older without any compensation whatsoever, not more than 28.5 grams of cannabis not in the form of concentrated cannabis . . . ." (§ 11362.1, subd. (a)(1).) Section 11362.1 further provides that "[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure, and no conduct deemed lawful by this section shall constitute the basis for detention, search, or arrest." (*Id.*, subd. (c).)

search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Garry* (2007) 156 Cal.App.4th 1100, 1105–1106.)

Where, as here, the defendant challenges the suppression ruling by a motion to dismiss under Penal Code section 995, we review the determination of the magistrate who ruled on the motion to suppress, not the findings of the trial court. (*People v. Ramsey* (1988) 203 Cal.App.3d 671, 679.) We affirm the magistrate's ruling if correct on any theory of the applicable law, even if the ruling was for an incorrect reason. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

## II.    The Patsearch

Under *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*), " '[a] police officer may temporarily detain and patsearch an individual if he believes that criminal activity is afoot, that the individual is connected with it, and that the person is presently armed. [Citation.] The issue is whether the officers can point to specific and articulable facts that give rise to a reasonable suspicion of criminal activity. Reasonable suspicion is a less demanding standard than probable cause and is determined in light of the totality of the circumstances. [Citation.]' [Citation.] ' "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." ' " (*People v. Lindsey* (2007) 148 Cal.App.4th 1390, 1395–1396 (*Lindsey*).)

Fews argues the patsearch was unlawful because there was no probable cause to conduct the vehicle search. We disagree that the validity of the patsearch is dependent on a finding of probable cause to conduct the vehicle search. As discussed, the patsearch is valid if the officers reasonably suspected that Fews was connected to criminal activity and was armed. (*Lindsey*, *supra*, 148 Cal.App.4th at pp. 1395–1396.) Here, the officers testified that they smelled and observed marijuana in and around the SUV, which "furnished a rational suspicion that [Mims and Fews] may have been in the possession

6

and transportation of drugs." (*People v. Collier* (2008) 166 Cal.App.4th 1374, 1377 (*Collier*).) The officers further testified that Fews was fidgeting and constantly moving inside the SUV and keeping his hands out of view while his companion, Mims (who had initially engaged in what the officers perceived as evasive driving and conduct when alerted to their presence), ignored the officers' orders to get back into the SUV and reached through the driver's side door despite being ordered not to. Although nervousness and furtive gestures are not sufficient by themselves to support a patsearch, "[n]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." (*In re H.M.* (2008) 167 Cal.App.4th 136, 144.)

Additionally, the incident involved a traffic stop in an area of San Francisco that the officers knew from experience to involve violent crime related to drugs. (See *Rodriguez v. United States* (2015) ___U.S. ___ [135 S. Ct. 1609, 1616] [traffic stops fraught with danger to police]; *In re H.M.*, *supra*, 167 Cal.App.4th at p. 146 [" ' "high crime area" ' " of stop is relevant contextual consideration in *Terry* analysis]; *People v. Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 827 [training and experience of officers is appropriate consideration].) Drug crimes have been recognized as offenses in which the perpetrators are likely to be armed with guns. (See *Collier*, *supra*, 166 Cal.App.4th at p. 1378 [" 'guns often accompany drugs' "].)

On appeal, Fews attempts to "divide and conquer" each of these factors as not sufficient in and of itself to justify the patsearch. However, our analysis is based on the totality of the circumstances and not picking each factor apart separately. (See *United States v. Arvizu* (2002) 534 U.S. 266, 274 [*Terry* precludes "divide-and-conquer" analysis].) Taken together, Mims's evasive and uncooperative conduct, combined with the high-crime area in which the traffic stop took place, the odor and presence of marijuana, and Fews's continuous and furtive movements inside the SUV, were sufficiently unusual to raise the officers' suspicions that Mims and Fews were involved in criminal activity related to drugs and could be armed.

Fews argues that after the passage of Proposition 64, law enforcement officers can no longer assume that a person possessing a small amount of marijuana is armed and engaged in criminal activity. We think this contention overstates the effect of Proposition 64. It remains unlawful to possess, transport, or give away marijuana in excess of the statutorily permitted limits, to cultivate cannabis plants in excess of statutory limits and in violation of local ordinances, to engage in unlicensed "commercial cannabis activity," and to possess, smoke or ingest cannabis in various designated places, including in a motor vehicle while driving. (Bus. & Prof. Code, §§ 26001, subd. (k), 26037, 26038, subd. (c); see Health & Saf. Code, §§ 11362.1, subd. (a), 11362.2, subd. (a), 11362.3, subd. (a), 11362.45, subd. (a).) The possibility of an innocent explanation for the possession of marijuana "does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct." (*In re Tony C.* (1978) 21 Cal.3d 888, 894.) Because marijuana possession and use is still highly circumscribed by law even after the passage of Proposition 64, the odor and presence of marijuana in a vehicle being driven in a high-crime area, combined with the evasive and unusual conduct displayed by Fews and Mims as discussed above, were still reasonably suggestive of unlawful drug possession and transport to support the *Terry* frisk.

For these reasons, we conclude the patsearch undertaken of Fews was, in the totality of the circumstances, reasonable for Fourth Amendment purposes.

### III.    The Vehicle Search

Even if we accepted Fews's argument that the officers' justification for the patsearch cannot be separated from their intended search of the SUV, we conclude there was sufficient probable cause for the vehicle search.

"[A] warrantless search of an automobile is permissible so long as the police have probable cause to believe the car contains evidence or contraband." (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1225.) Probable cause posits "a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates*

8

(1983) 462 U.S. 213, 238.) "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." (*Id*. at p. 243, fn. 13.)

In *People v. Strasburg* (2007) 148 Cal.App.4th 1052 (*Strasburg*), a different panel of this division held that a police officer had probable cause to search a vehicle based on the odor of marijuana, despite the defendant's presentation of a medical marijuana prescription. (*Strasburg*, at pp. 1058–1059.) The court rejected the defendant's argument that the decriminalization of medicinal marijuana under the Compassionate Use Act of 1996 (CUA) bars a law enforcement officer from conducting a reasonable search based on the odor of marijuana. "[T]he officer is entitled to continue to search and investigate, and determine whether the subject of the investigation is in fact possessing the marijuana for personal medical needs, and is adhering to the eight-ounce limit on possession." (*Strasburg*, at p. 1060.)

In *Waxler*, another division of this court followed *Strasburg* to conclude that a sheriff's deputy had probable cause to search the defendant's truck for contraband after smelling burnt marijuana near the truck and seeing burnt marijuana in the truck. (*Waxler*, *supra*, 224 Cal.App.4th at p. 719.) "[N]onmedical marijuana—even in amounts within the statutory limit set forth in [Health and Safety Code] section 11357, subdivision (b)— is 'contraband' and may provide probable cause to search a vehicle under the automobile exception." (*Waxler*, at p. 715.) Thus, the deputy "was entitled to investigate to determine whether appellant possessed marijuana for personal medical needs and to determine whether he adhered to the CUA's limits on possession. . . . It is well settled that even if a defendant makes only personal use of marijuana found in the passenger compartment of a car, a police officer may reasonably suspect additional quantities of marijuana might be found in the car." (*Id*. at pp. 723–724.)

Fews provides no compelling reason to depart from *Strasburg* and *Waxler* after the passage of Proposition 64, particularly in light of the facts of the instant case. The

9

continuing regulation of marijuana leads us to believe that *Strasburg* and *Waxler* still permit law enforcement officers to conduct a reasonable search to determine whether the subject of the investigation is adhering to the various statutory limitations on possession and use, and whether the vehicle contains contraband or evidence of a crime. (See *Strasburg*, *supra*, 148 Cal.App.4th at p. 1060; *Waxler*, *supra*, 224 Cal.App.4th at pp. 721, 723–724; see also *People v. Zuniga* (Colo. 2016) 372 P.3d 1052, 1059 [holding that despite Colorado's legalization of marijuana, "a substantial number of other marijuana-related activities remain unlawful under Colorado law. Given that state of affairs, the odor of marijuana is still suggestive of criminal activity."]; *Robinson v. State* (Md.Ct.App. 2017) 152 A.3d 661, 664–665].) Due to the odor of marijuana emanating from the SUV and Mims, as well as Mims's admission that there was marijuana in his half-burnt cigar, there was a fair probability that a search of the SUV might yield additional contraband or evidence.

Fews contends that marijuana is no longer contraband in California after Proposition 64. Again, Fews overstates the effect of Proposition 64. Section 11362.1, subdivision (c), provides that "[c]annabis and cannabis products involved in any way with conduct *deemed lawful by this section* are not contraband nor subject to seizure, and no conduct *deemed lawful by this section* shall constitute the basis for detention, search, or arrest." (Italics added.) Driving a motor vehicle on public highways under the influence of any drug (see Veh. Code, § 23152, subd. (f)) or while in possession of an open container of marijuana (Veh. Code, § 23222, subd. (b)(1); *People v. McCloskey* (1990) 226 Cal.App.3d Supp. 5, 9) are not acts "deemed lawful" by section 11362.1. On the contrary, "[s]ection 11362.1 does not permit any person to [¶] . . . [¶] . . . [p]ossess an open container or open package of cannabis or cannabis products while driving, operating, or riding in the passenger seat or compartment of a motor vehicle" (Health & Saf. Code, § 11362.3, subd. (a)(4)) or "[s]moke or ingest cannabis or cannabis products while driving" a motor vehicle (*id.*, subd. (a)(4)). Here, the evidence of the smell of

10

"recently burned" marijuana and the half-burnt cigar containing marijuana supported a reasonable inference that Mims was illegally driving under the influence of marijuana, or, at the very least, driving while in possession of an open container of marijuana. Because this was not conduct "deemed lawful" by section 11362.1, Fews cannot validly rely upon the "not contraband" designation of section 11362.1, subdivision (c), in order to avoid the holding in *Waxler*.[4]

Fews cites *In re D.W.* (2017) 13 Cal.App.5th 1249 for the position that the smell of marijuana and a defendant's admission to recently smoking marijuana do not establish probable cause to search the defendant's vehicle because it is mere conjecture to conclude that within the vehicle there is marijuana amounting to more than just an infraction. However, *In re D.W.* involved a warrantless search of a defendant's person incident to arrest, which requires independent probable cause for the arrest. (*In re D.W.*, at p. 1253.) In contrast, the instant matter involves a vehicle search pursuant to the automobile exception, which requires probable cause that the vehicle contains contraband or evidence of a crime. Where such probable cause exists, a law enforcement officer may search the vehicle "irrespective of whether possession of up to an ounce of marijuana is an infraction and not an arrestable offense." (*Waxler*, *supra*, 224 Cal.App.4th at p. 721.)

---

[4] Fews contends that at the time of the traffic stop in question, there were no statutes prohibiting the passenger of a motor vehicle from smoking marijuana, and former Vehicle Code sections 23220 and 23221 only made it illegal for passengers in a motor vehicle upon a highway to drink alcohol. However, at the time of the incident in question, Vehicle Code section 23222 stated in pertinent part that "every person who possesses, while driving a motor vehicle upon a highway . . . , not more than one avoirdupois ounce of marijuana, other than concentrated cannabis . . . , is guilty of an infraction . . . ." (Veh. Code, § 23222, subd. (b); see *People v. McCloskey*, *supra*, 226 Cal.App.3d Supp. at p. 9.) An infraction is, by definition, a crime. (Pen. Code, § 16.) Thus, the possession of even a small amount of marijuana while driving was still unlawful. These circumstances are akin to the open container rule for alcohol. "[T]here is no quarrel with the legal proposition that, after observing the open container of alcohol, the officers had the right to search the vehicle for additional containers of alcohol." (*People v. Chapman* (1990) 224 Cal.App.3d 253, 256.)

11

For these reasons, we conclude there was sufficient probable cause for the warrantless search of the SUV.  This, in turn, provides additional support for the validity of the patsearch of Fews on officer safety grounds because, as the magistrate found, the vehicle search would have left one of the officers outnumbered by Mims and Fews, who was wearing baggy clothes that could conceal a weapon.  (See *Collier*, *supra*, 166 Cal.App.4th at p. 1377, fn. 1 ["[t]he wearing of baggy clothing, coupled with other suspicious circumstances, . . . furnishes the requisite facts to support a patdown for weapons so that the search of the car could be safely performed"].)

## DISPOSITION

The judgment is affirmed.

_____
Dondero, J.

We concur:


_____
Margulies, Acting P. J.


_____
Banke, J.

*People v. Fews  A151727*

13

Trial Court:   San Francisco City and County Superior Court

Trial Judge:   Hon. Jeffrey S. Ross

Counsel:

Jeff Adachi, San Francisco Public Defender, Matt Gonzalez, Chief Attorney, Christopher F. Gauger, Deputy Public Defender, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Rene A. Chacon, Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

*People v. Fews  A151727*