Filed 8/15/25  P. v. Robles CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MAKAYLA A. ROBLES,<br><br>    Defendant and Appellant. | A170693<br><br>(Solano County<br>Super. Ct. No. CR364753) |

A police officer stopped a vehicle in which defendant Makayla A. Robles was a passenger, saw open containers of marijuana, searched the vehicle, and found a large quantity of fentanyl pills in defendant's backpack.  A jury found defendant guilty of possession of fentanyl for sale.  (Health & Saf. Code, § 11351.)

On appeal, defendant contends the trial court erred in denying her motion to suppress evidence found during the search.  She also argues the trial court improperly excluded evidence to support her theory that the fentanyl pills belonged to another occupant of the vehicle and erred in refusing to give a pinpoint instruction on a theory of third party culpability. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was charged by information with one count of possession for sale of a controlled substance, fentanyl (Health & Saf. Code, § 11351), with a

special allegation that the crime involved a large quantity of contraband (Cal. Rules of Court, rule 4.421(a)(10)).

## I.     Hearing on Motion to Suppress

Before trial, defendant moved to exclude evidence obtained during a warrantless search of the vehicle.

At the hearing on the motion, Officer Issac Stevens of the Vacaville Police Department testified.  At about 10:20 on the night of July 14, 2022, Stevens saw a vehicle with a burnt-out brake light.  A record check showed that the vehicle's registration had expired, and he conducted a traffic stop.

There were three people in the vehicle:  the driver, Somechay Southy; defendant, who was in the front passenger seat; and Miguel Torres Hernandez (Torres), who was sitting in the back seat.  Southy appeared to Officer Stevens to be impaired in some manner.  Stevens described him as having a "hundred yard stare," in the manner of someone under the influence of alcohol, marijuana, or narcotics, and he gave delayed responses to Stevens's questions.  Southy did not have a valid driver's license.

Stevens asked Southy if he had smoked marijuana recently, and Southy appeared confused and did not answer right away.  Stevens asked him several more times whether he had smoked marijuana, and defendant told Southy to answer Stevens.  Southy then told Stevens that he had smoked marijuana a few hours previously, and he attributed his condition to being tired after work.  When Stevens asked whether there was still any marijuana in the car, defendant showed him a fresh "blunt" of marijuana near the gear shift area, and Torres handed Stevens an open plastic baggie of marijuana.[1]

---

[1] A "blunt" is a cigar that is split to remove tobacco and add marijuana, and then rerolled.  (*People v. Fews* (2018) 27 Cal.App.5th 553, 557 (*Fews*).)

2

Stevens told the trio that he would conduct a probable cause search of the vehicle for additional marijuana. He first removed Southy and Torres. Defendant uses a wheelchair, and Stevens assisted her into it. Before he did so, defendant told him she needed to use the restroom and wanted to take her backpack with her, but he did not allow her to do so.

During the search of the vehicle, another officer examined the backpack, which was on the front passenger floorboard, and found several packages of pills. After being advised of her constitutional rights, defendant told Stevens the bag contained fentanyl pills.

The trial court denied the motion to suppress, finding both the traffic stop and the search valid.

## II. Trial

### *Prosecution Evidence*

Officer Stevens testified at trial. After describing the traffic stop, the removal of defendant from the car, and the search of the vehicle, he explained that a black grocery bag with several individual baggies of pills and Narcan nasal spray, which is used for opioid overdoses, were found in the backpack on the passenger side floorboard. The bags were later found to contain thousands of fentanyl tablets.

Stevens handcuffed defendant, and as he did so she said repeatedly, "It's not mine." After being informed of her constitutional rights, however, she told Stevens that Southy was her boyfriend and the passenger in the back seat was a friend. According to defendant, she and Southy had left their home in San Jose, picked up Torres, and driven with him to Solano County. She received a message on Instagram from someone directing her to meet in the outskirts of Dixon; when they arrived, she saw a vehicle parked in front of them, flashing its lights. A man got out of that vehicle, approached

3

defendant's, and dropped a black grocery bag containing the pills, which she put into her backpack. Defendant admitted that the pills contained fentanyl. Defendant expected to get a message later telling her where to drop off the pills. She expected to be paid between $2,000 and $4,000 for the transaction, and she acknowledged she had been paid to do a similar job in the past. She said neither Southy nor Torres knew what she was doing.

Stevens testified that someone who possesses fentanyl for personal use would generally have an ounce or less, approximately 28.5 grams, or about 10 pills. He had never been involved in an arrest that came close to the amount found in the bag.

There was expert testimony that the amount and packaging of the pills, along with the presence of Narcan spray, indicated the fentanyl was being transported for purposes of sale.

The prosecution also introduced evidence of an uncharged offense: that approximately a year after the crime at issue here, police executed a search warrant at defendant's home, searched the bedroom she shared with Southy, and in a safe found approximately 600 fentanyl pills of the same sort at issue in this case. Southy, but not defendant, was arrested. The jury was instructed to consider evidence of the uncharged offense only in deciding whether defendant knew the pills found in her backpack were fentanyl at the time of the charged offense.

### Defendant's Testimony

Defendant testified in her own defense. Her version of events was as follows:

Defendant, who was 23 years old at the time of the offense, was in the car with Southy and Torres. Defendant and Southy planned to drive from San Jose to Solano County to visit defendant's family, and Torres asked for a

4

ride. They went first to the home of defendant's grandparents, in Fairfield, and defendant went inside to visit with them. When she returned to the car, Torres said he needed to go somewhere else, and he gave directions as they drove. They went to a field in Dixon and came to a stop near a parked car. Defendant did not ask why they were going to that spot because she was afraid of Torres.

Torres got out and walked to the other car, where defendant saw a few people standing. Torres returned and directed Southy back toward the freeway. The three of them then drove to the home of defendant's aunt in Vacaville.

Just as they were arriving, Officer Stevens pulled their car over. As they parked, Southy suggested they be ready to show the officer anything they had in the car. Defendant opened her backpack, which contained "wraps" or "cigars," as well as supplies to help her with her medical condition. Defendant took out the "wraps," and Torres threw a black bag toward her, telling her not to say anything or to "snitch." Defendant panicked and pushed the black bag down into her backpack, without zipping the backpack closed.

Stevens asked them if there was anything else in the car that he should know about. Defendant did not tell him about the bag because she was scared of Torres, whom she knew to carry guns and whom she had seen physically abusing his former girlfriend, a close friend of defendant's. After the drugs were found, defendant told Stevens that no one else in the car knew what was in the bag, because she was frightened. As Stevens was questioning her, defendant saw an expression on Torres's face that she recognized from seeing him as he hit his former girlfriend, and he kept telling her not to "snitch" (although she acknowledged the audio recording from

5

Stevens's body camera did not reflect these words). As a result, she thought she needed to lie to Stevens, and she made up the story she told him about how she received the drugs. She did not know what was in the bag until Stevens said it was fentanyl.

Later that evening, defendant spoke with a police detective, who examined her phone. She had no social media posts or text messages telling her where to pick up drugs, and no record of anonymous phone calls.

***Verdict and Sentence***

The jury found defendant guilty of possession for sale of a controlled substance (Health & Saf. Code, § 11351), and found true the allegation that the crime involved a large quantity of contraband (Cal. Rules of Court, rule 4.421(a)(10)).

The trial court denied probation and sentenced defendant to the low term of two years. (Health & Saf. Code, § 11351.) This timely appeal ensued.

## DISCUSSION

### I. Denial of Motion to Suppress

Defendant contends the trial court's denial of her motion to suppress evidence was error because the presence of open containers of marijuana did not provide probable cause to search her backpack. In considering this question, we review the trial court's determination of the facts for substantial evidence. (*People v. Thompson* (2010) 49 Cal.4th 79, 111–112 (*Thompson*).) The application of the relevant law to those facts is a mixed question of law and fact subject to our independent review. (*Id*. at p. 112.)

A warrantless search, such as the one that took place here, is presumptively unreasonable, but there are exceptions to this rule. (*United States v. Ross* (1982) 456 U.S. 798, 825 (*Ross*).) The one at issue here is the

6

automobile exception, which is "rooted in the reduced expectation of privacy in a vehicle, the fact a vehicle is inherently mobile, and the historical distinctions between searches of automobiles and dwellings." (*People v. Evans* (2011) 200 Cal.App.4th 735, 753 (*Evans*).)

The automobile exception provides that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (*Ross, supra,* 456 U.S. at p. 825.) The search may encompass "a probing search of compartments and containers within the vehicle whose contents are not in plain view." (*Id.* at p. 800.) Probable cause "exists 'where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found.' " (*People v. Lee* (2019) 40 Cal.App.5th 853, 862 (*Lee*).) We consider the totality of the circumstances to determine whether "a reasonable officer would have probable cause to search" the vehicle under this standard. (*Ibid.*)

Several recent cases have considered this rule in the context of marijuana observed in a vehicle during a traffic stop.[2] One that is

---

[2] A related question is currently pending before our high court. In *Sellers v. Superior Court* (2024) 104 Cal.App.5th 468, 472, review granted December 18, 2024, S287164, the Third District Court of Appeal concluded that an officer's "plain-view observation of a marijuana rolling tray and approximately 0.36 grams of loose marijuana on the rear floorboard, coupled with other factors, provided probable cause" for a warrantless vehicle search. The court concluded, first, that the loose marijuana was contraband because it was being transported illegally, and second that, even if it was not contraband, the totality of the circumstances—including a nervous driver, the false statement that there was no marijuana, and the presence of a rolling table and a usable amount of marijuana—formed probable cause. (*Id.* at pp. 478–479.)

In granting review, our high court set forth these issues to be briefed and argued: "1. Does the presence of 0.36 grams of loose marijuana on the

particularly pertinent to our inquiry is *People v. McGee* (2020) 53 Cal.App.5th 796 (*McGee*).) There, an officer who stopped a vehicle smelled marijuana and saw an unsealed bag of marijuana plainly visible on a passenger's person. (*Id*. at p. 799.) The officer searched a zipped purse found on the passenger floorboard and found a loaded handgun. (*Id*. at p. 799.) The trial court denied the defendant's motion to suppress the evidence seized during the search, and the appellate court affirmed, concluding the marijuana provided probable cause to search the passenger's purse. (*Id*. at pp. 799–800.)

The appellate court in *McGee* explained that California law had recently changed to generally legalize possession of limited quantities—not more than 28.5 grams—of cannabis. (*McGee, supra*, 53 Cal.App.5th at pp. 801–802; Health & Saf. Code, § 11362.1, subd. (a), added by Proposition 64, adopted by voters on November 8, 2016.) Specifically, the court pointed to subdivision (c) of that statute, which provides: " 'Cannabis and cannabis products involved in any way with conduct *deemed lawful by this section* are not contraband nor subject to seizure, and no conduct *deemed lawful by this section* shall constitute the basis for detention, search, or arrest.' " (*McGee*, at p. 802, italics added.) This provision, the court concluded, "indicates the Legislature's intent to remove cannabis from the ranks of contraband that gives rise to probable cause searches," and establishes that the simple presence of a lawful amount of marijuana does not establish probable cause to search a vehicle. (*Ibid*.) That is, there must be "additional evidence,

floor of a vehicle constitute an open container violation under Health & Safety Code, section 11362.3, subdivision (a)(4)? 2. Does the answer to this question affect whether there was probable cause for a warrantless vehicle search under the totality of the circumstances, such that remand would be required for reconsideration of the Court of Appeal's alternative analysis, *Sellers v. Superior Court*, [*supra*, 104 Cal.App.5th at pp.] 478–479?" (*Sellers v. Superior Court*, review granted Dec. 18, 2024, S287164.)

8

beyond mere possession of a legal amount of marijuana, to support a reasonable belief the defendant has an illegal amount or is violating some other statutory provision." (*Id*. at p. 803, citing *Lee*, *supra*, 40 Cal.App.5th at pp. 860–862 [motion to suppress properly granted when defendant possessed legal amount of marijuana and there was no indication of statutory violation].)

The appellate court in *McGee* found evidence of such a statutory violation in the presence of an open container of marijuana on the person of the defendant's passenger. Health and Safety Code section 11362.3, subdivision (a)(4) provides that section 11362.1 does not permit a person to "[p]ossess an open container or open package of cannabis or cannabis products while driving, operating, or riding in the passenger seat or compartment of a motor vehicle . . . ." The officer saw the passenger in possession of an unsealed container of marijuana in violation of this provision, so the court concluded the officer had probable cause to believe the passenger possessed other open containers and to search the passenger and her purse for further evidence of contraband. (*McGee*, *supra*, 53 Cal.App.5th at p. 804.)

The court in *McGee* relied in part on a decision of our colleagues in Division One of this district, *Fews*, *supra*, 27 Cal.App.5th 553. (See *McGee*, *supra*, 53 Cal.App.5th at pp. 803–804.) The defendant in *Fews* was a passenger in a car that was pulled over while driving with expired registration, in an area of San Francisco known for narcotics use and sales, in a manner that suggested the driver was trying to avoid a traffic stop. (*Fews*, at pp. 556–558.) The driver did not cooperate with police officers' directions, and the defendant was seen to make " 'furtive movements around the passenger compartment.' " (*Id*. at p. 557.) The driver was holding a half-

9

burnt, rerolled cigar, and a police officer recognized the smell of recently burned marijuana. (*Ibid*.) The defendant got out of the vehicle, and a patsearch of his person revealed a loaded semi-automatic firearm. (*Id*. at p. 558.) The appellate court rejected the defendant's challenge to the legality of the patsearch, concluding that the totality of the circumstances, including the presence of marijuana, reasonably suggested that the defendant and driver might have been transporting drugs. (*Id*. at pp. 559–561.) The presence of marijuana was a proper factor, because even after the passage of Proposition 64 it remained illegal, inter alia, to possess, smoke, or ingest cannabis in a motor vehicle while driving. (*Id*. at p. 561.)

More recently, following *McGee*, our colleagues in Division Five upheld the denial of a minor's motion to suppress evidence of weapons found in a vehicle he was driving. (*In re Randy C.* (2024) 101 Cal.App.5th 933, 936.) The car was stopped because an officer believed the windows were illegally tinted, and in a passenger's lap the officer saw a marijuana blunt. (*Id*. at p. 938.) The officer searched the car and found the weapons. (*Id*. at pp. 938-939.) On appeal, the minor challenged the juvenile court's finding that the marijuana blunt on his passenger's lap was an open container within the meaning of Health and Safety Code section 11362.3, subdivision (a)(4) and provided probable cause for the vehicle search. (*Randy C.*, at p. 939.) Our colleagues rejected this contention. Citing *People v. Castro* (2022) 86 Cal.App.5th 314, 320–321, they explained, " 'section 11362.1, added by Proposition 64, " 'fundamentally changed the probable cause determination by specifying *lawfully possessed cannabis* is "not contraband" and *lawful conduct* under the statute may not "constitute the basis for detention, search or arrest." [Citations.]' [Citation.] But this applies only to activities 'deemed lawful' by Proposition 64." ' " (*Randy C.*, at p. 940.) The

*Randy C.* court concluded the officer had probable cause to search the vehicle "based on [his] observation of the unburned marijuana blunt—a usable amount of marijuana in an open container in violation of section 11362.3, subdivision (a)(4)." (*Ibid*.) "[A]long with the smell of unburnt marijuana emanating from the vehicle," this "provided probable cause to believe minor or his passenger may also have possessed additional marijuana in violation of . . . section 11362.3, subdivision (a)(4).)" (*Ibid*.)

This line of cases drew in part upon established case law regarding open containers of alcohol in vehicles. For instance, the issue in *People v. Souza* (1993) 15 Cal.App.4th 1646 (*Souza*) was whether the trial court should have suppressed evidence seized as a result of an automobile search carried out after an officer observed the defendant driving erratically and appearing nervous during an ensuing traffic stop, and saw a cardboard box containing beer bottles, as well as a bottle of tequila that had been opened, directly behind the driver's seat. (*Id*. at pp. 1648–1649.) Concluding the bottle of tequila violated the Vehicle Code, the officer pulled out not only the tequila but the beer bottles, to determine if they were open, and he saw an open manila envelope containing cash and a white powdery substance that was later found to be methamphetamine. (*Suoza*, at pp. 1649–1650.)

The appellate court agreed that the bottle of tequila that had been opened violated the Vehicle Code. (*Souza*, *supra*, 15 Cal.App.4th at pp. 1651–1653; see Veh. Code, § 23225 [prohibiting open container of alcoholic beverage in area of vehicle occupied by driver and passengers].) And, the court went on, based on that violation the officer was entitled to seize not only the open bottle of tequila, but also to take beer bottles out of their box to ascertain whether they were opened, "since an open container within plain view provides probable cause to believe that other open containers may be

11

found in the vehicle," and he was likewise entitled to seize the envelope he saw during the search. (*Suoza*, at p. 1653.)

Older cases have likewise explained that the presence of an open container of alcohol in a vehicle provides probable cause for an officer to search for more. (See, e.g., *People v. Chapman* (1990) 224 Cal.App.3d 253, 256, 258–259 ["after observing the open container of alcohol, the officers had the right to search the vehicle for additional containers of alcohol," although not to search a small container that did not suggest possibility of additional alcohol]; *People v. Suennen* (1980) 114 Cal.App.3d 192, 202 [officer who saw open beer cans in vehicle had "right to conduct a further examination of the vehicle to ascertain whether additional open beer cans were in the car"]; *People v. McNeal* (1979) 90 Cal.App.3d 830, 840, fn. 3 [officer's view of open beer can provided probable cause to examine vehicle for more open containers].)

These authorities are dispositive of the matter now before us. Defendant does not challenge Officer Stevens's decision to stop the car in the first place; rather, she challenges the search of her backpack. Stevens searched the backpack after seeing two examples of marijuana illegally present in an open container—the blunt that was by the gear shift area between defendant and Southy, and the open bag of marijuana in the back seat with Torres. Under the reasoning of *Randy C.*, *McGee*, and *Fews*, that marijuana was contraband, and it provided probable cause to believe that further contraband was present in the vehicle. And, although only these two examples were visible, the vehicle had three occupants, including a driver who appeared impaired. In the circumstances, the officers were justified in searching the vehicle and its contents, including defendant's backpack, which might readily carry more unsealed marijuana. (See *Ross*, *supra*, 456 U.S. at

12

p. 800; *McGee*, *supra*, 53 Cal.App.5th at pp. 804–805 [search of passenger's purse upheld].)

Defendant argues that, to the extent *McGee* supports the search of her backpack, it was wrongly decided. She is not assisted by her citation to cases in which evidence of the *legal* presence of marijuana did not support a search. (See *People v. Hall* (2020) 57 Cal.App.5th 946, 954, 957–958 [search improper where there was no evidence of unlawful amount of marijuana, driving under influence, or open container]; *People v. Johnson* (2020) 50 Cal.App.5th 620, 627, 629–635 [presence of a baggie, tied shut, with two grams of marijuana did not suggest there were any *open* containers in the vehicle]; *Lee*, *supra*, 40 Cal.App.5th at p. 866 [no odor of burnt marijuana or open container]; *People v. Shumake* (2019) 45 Cal.App.5th Supp. 1, 6, 8 [no partially smoked cannabis in plain view, cannabis flower on console was in closed container]; see also *Blakes v. Superior Court* (2021) 72 Cal.App.5th 904, 912–913 [vehicle that smelled of burnt marijuana improperly searched where there was no evidence of intoxicated driver or open container].) These cases have no application where, as here, there is evidence of both an impaired driver and open containers of cannabis in a vehicle.[3]

Nor is the rule of *McGee* undercut by cases considering the search of a defendant's person or home where there was no indication the defendant possessed enough marijuana for a jailable offense. (See *In re D.W.* (2017) 13

---

[3] Defendant challenges Officer Stevens's testimony that Southy appeared to be under the influence of alcohol or another drug, pointing out that there is no indication Stevens conducted field sobriety tests or issued a citation to Southy. But Stevens's testimony about Southy's "hundred yard stare" and initial unresponsiveness to questions went unrebutted and could properly be considered in assessing whether the totality of circumstances supported probable cause. (See *Thompson*, *supra*, 49 Cal.4th at pp. 111–112 [we review trial court's resolution of facts for substantial evidence].)

13

Cal.App.5th 1249, 1251, 1253 [no valid search incident to arrest where minor admitted having smoked marijuana, as only conjecture suggested minor possessed more than 28.5 grams]; *People v. Torres* (2012) 205 Cal.App.4th 989, 993, 995–996 [warrantless entry of hotel room not justified by exigent circumstances where there was no indication enough marijuana was present to constitute jailable offense].)  In contrast to the exceptions to the warrant requirement that are discussed in these cases, the automobile exception at issue here—which is based in part on a reduced expectation of privacy in a vehicle—"requires only a showing of probable cause the vehicle contains contraband or evidence of a crime," which need not be an arrestable offense. (*McGee*, *supra*, 53 Cal.App.5th at p. 805; see *Evans*, *supra*, 200 Cal.App.4th at p. 753.)

We recognize that the Supreme Court has explained, "[t]he scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found." (*Ross*, *supra*, 456 U.S. at p. 824.)  Thus, if there is probable cause to believe a stolen lawnmower may be found in a garage, a search of an upstairs bedroom is improper; "probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase"; and "[p]robable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." (*Ibid*.)  Unlike the locations in these common-sense examples, defendant's backpack was in the passenger compartment of the car, readily accessible to its occupants and large enough to contain another open container of marijuana.  Even in the absence of defendant's efforts to remove the backpack from the car before it was searched—efforts that might reasonably increase an officer's suspicions—we are satisfied that it fell within

14

the ambit of places where there was probable cause to believe contraband might be found.

We thus reject defendant's challenge to the denial of her motion to suppress evidence.

## II. Exclusion of Evidence of Torres's Criminal History

In support of her theory that Torres, not she, possessed the drugs for sale, defendant sought to introduce evidence of Torres's history of criminal activity. As pertinent here, she proffered evidence that Torres had twice been arrested in 2022, for charges including possession of fentanyl for sale—including the same type of fentanyl pills found in defendant's backpack—domestic violence, and gun possession, and that he had apparently suffered two convictions as a result, at least one of them for domestic violence. This evidence, she argued, would corroborate her testimony that she was afraid of Torres because he was violent and was known to carry guns.[4]

The trial court excluded the evidence on the grounds that it was inadmissible propensity evidence (see Evid. Code, § 1101, subd. (a)) and that any probative value would be outweighed by the potential for undue consumption of time and confusion of the jury (see Evid. Code, § 352).

We review the trial court's decision to exclude evidence for abuse of discretion. (*People v. Vieira* (2005) 35 Cal.4th 264, 292.) The trial court has broad discretion to determine whether the probative value of evidence is outweighed by the risks of undue prejudice or consumption or time, and we reverse only if the appellant shows the trial court exercised its discretion in

[4] Defendant testified that she was afraid of Torres because she had seen him be violent with his girlfriend and knew him to carry guns. However, her trial counsel urged the court to admit the evidence of "a combination of drugs and guns" as corroborative of her testimony that she feared him "because he was dangerous, known to carry drugs."

15

an arbitrary, capricious, or patently absurd manner, resulting in a " 'manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

We first consider the evidence of Torres's prior possession of similar illegal drugs for sale. Section 1101, subdivision (a) of the Evidence Code generally prohibits evidence of a person's prior conduct in order to prove his or her conduct on a specified occasion. However, " ' "other crimes" evidence is admissible under Evidence Code section 1101, subdivision (b) "when offered as evidence of a [person's] motive, common scheme or plan, preparation, intent, knowledge, identity, or absence of mistake or accident in the charged crimes." ' [Citation.] 'In this inquiry, the degree of similarity of criminal acts is often a key factor, and "there exists a continuum concerning the degree of similarity required for cross-admissibility, depending upon the purpose for which introduction of the evidence is sought: 'The least degree of similarity . . . is required in order to prove intent . . . .' . . . By contrast, a higher degree of similarity is required to prove common design or plan, and the highest degree of similarity is required to prove identity." ' " (*People v. Erskine* (2019) 7 Cal.5th 279, 295.)

In the context of evidence of third party culpability for a crime, our high court has explained that such evidence is admissible only if it " 'link[s] the third person either directly or circumstantially to the actual perpetration of the crime. In assessing an offer of proof relating to such evidence, the court must decide whether the evidence could raise a reasonable doubt as to defendant's guilt and whether it is substantially more prejudicial than probative under Evidence Code section 352.' [Citations.] Evidence of a third party's prior crimes is inadmissible to establish the third party's criminal propensity. [Citations.] For evidence of an uncharged offense to be admissible to establish the third party's identity as the perpetrator of the

16

charged crimes, ' "[t]he pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature." ' " (*People v. Elliott* (2012) 53 Cal.4th 535, 580–581.)

The trial court could reasonably conclude the evidence of Torres's prior drug-related offenses was not admissible to show either his responsibility for the offense or defendant's state of mind. Although Torres's prior arrests appear to involve pills similar to those found in this case, there is no indication that fentanyl pills of this description are rare enough to support an inference that Torres was responsible for them, and defendant did not testify that she confessed falsely to the offense because Torres's involvement in drug dealing caused her to fear him.

Defendant urges that the evidence is relevant to Torres's mental state, in that it goes to prove his motive, knowledge, and intent in possessing the pills, but this argument fails for a different reason. Defendant relies on *People v. Williams* (2009) 170 Cal.App.4th 587, 607, which explains that in prosecutions for drug offenses, evidence of prior convictions may be admissible to establish that a defendant possessed drugs for sale rather than personal use and to prove the defendant's knowledge of the nature of the drugs. But Torres was not on trial, and the question of *his* knowledge of the nature of the pills or *his* intent or motive in possessing them was not an issue before the jury. The only realistic use of the evidence would be to show his propensity to possess drugs for sale, a use that is forbidden by Evidence Code section 1101.

The admissibility of the evidence of arrests or convictions for domestic violence and gun possession presents a slightly different question, since defendant testified she feared Torres because she had seen him physically abusing his former girlfriend and knew him to carry guns. But there is no

17

indication defendant viewed, or had heard about, the particular events leading up to either of these arrests. The first arrest occurred a few months before defendant was found with pills in her backpack. It involved no evidence of gun possession, and though it later resulted in what was apparently a misdemeanor conviction for domestic violence, the record includes few specifics about the incident and none that show defendant was a witness. As for the second arrest, which was for domestic violence, gun possession, and other charges, it did not occur until several months *after* defendant's alleged crime, and could therefore not have been the basis for any fear defendant felt when she was talking to the police that evening. In the circumstances, the trial court could reasonably conclude that the proffered evidence showed only Torres's propensity to commit such crimes, and that it was therefore inadmissible under Evidence Code section 1101, subdivision (a). (Compare Evid. Code, § 1109, subd. (a)(1) [evidence of a *defendant's* commission of other acts of domestic violence may be admitted where defendant accused of offense involving domestic violence].)

Defendant argues that the trial court's ruling deprived her of her constitutional right to present her defense. Again, we are unpersuaded. Defendant was permitted to testify that Torres, rather than she, was involved in the drug deal and that she confessed falsely because she was afraid of him. In excluding further evidence of Torres's criminal history, the trial court merely applied the ordinary rules of evidence, which " 'do not impermissibly infringe on the accused's [state or federal constitutional] right to present a defense.' " (*People v. Robinson* (2005) 37 Cal.4th 592, 626–627 (*Robinson*).)

18

## III.  Instruction on Third Party Culpability

Defendant contends the trial court erred in refusing to provide a pinpoint instruction to highlight her theory that Torres was responsible for the crime.

Defendant asked the court to instruct the jury as follows:  "You have heard evidence that . . . [Torres] committed the offense with which the defendant is charged.  The defendant is not required to prove [Torres's] guilt.  The defendant is not required to prove these facts beyond a reasonable doubt.  In order to be entitled to a verdict of not guilty, the evidence establishing that [Torres] committed the charged offense need only raise a reasonable doubt in your mind that the defendant is guilty."  The prosecutor objected to the instruction, noting that it is not part of the standard CALCRIM instructions, and taking the position the defense would remain free to argue that Torres was the guilty party.  The trial court declined to provide the pinpoint instruction.

Defendant contends this ruling was error, because the instruction requested was an accurate statement of the law, which allows a defendant to present evidence of third party culpability if it is capable of raising a reasonable doubt as to the defendant's guilt (*Robinson*, *supra*, 37 Cal.4th at p. 625), and because the proposed instruction highlighted her defense.

When requested, a trial court must give jury instructions pinpointing the theory of the defense.  (*People v. Hughes* (2002) 27 Cal.4th 287, 361; *People v. Gutierrez* (2009) 45 Cal.4th 789, 824.)  However, it need not provide instructions that are argumentative.  (*People v. Hartsch* (2010) 49 Cal.4th 472, 504 (*Hartsch*).)  In *Hartsch*, the trial court refused to provide a proposed instruction that stated, "Evidence has been presented . . . indicating or tending to prove that someone other than defendant committed, or may have

19

had a motive and opportunity to commit, the offense(s) charged," that it was the jury's role to determine the weight and significance of that evidence, and that it must find the defendant not guilty if it had a reasonable doubt that he committed the charged offenses in light of all the evidence presented. (*Ibid*.) Finding no error in the trial court's ruling, our high court explained that the proposed instruction was "unduly argumentative, because it *told* the jury that evidence 'indicat[ed] or tend[ed] to prove that someone other than the defendant committed, or may have had a motive and opportunity to commit, the offense(s) charged,' " violating the rule that an instruction should not "indicate an opinion favorable to the defendant regarding the effect of the evidence." (*Ibid*.; accord, *People v. Fayed* (2020) 9 Cal.5th 147, 177 (*Fayed*) [instruction on third party culpability inviting jury to draw inferences in favor of defendant was argumentative and improper].)

We need not decide whether the proffered instruction was improperly argumentative because, even assuming the trial court erred, defendant has not shown prejudice from its omission. As our high court has explained, "similar instructions add little to the standard instruction on reasonable doubt" (*Hartsch*, *supra*, 49 Cal.4th at p. 504, citing *People v. Wright* (1988) 45 Cal.3d 1126, 1134), which the jury here received. And defendant remained free to—and did—argue to the jury that the evidence showed that Torres was the person responsible for possessing the fentanyl for sale. (See *Hartsch*, at p. 504.) In the words of our high court in another case, "[t]he jury was instructed . . . that the prosecution had to prove defendant's guilt beyond a reasonable doubt, and the jury knew from defense counsel's argument the defense theory that [another person], not defendant, had committed the crimes. Under these circumstances, it is not reasonably probable that had the jury been given defendant's proposed pinpoint instruction, it would have

20

come to any different conclusion in this case." (*People v. Earp* (1999) 20 Cal.4th 826, 887; accord, *Fayed*, *supra*, 9 Cal.5th at p. 178 [reasonable doubt instruction gave defendant " 'ample opportunity to impress upon the jury that evidence of another party's liability must be considered in weighing whether the prosecution has met its burden of proof' "].)

Defendant urges us not to apply the general rule that an instruction on reasonable doubt obviates any prejudice because, she contends, the trial court "arguably instructed jurors" not to consider Torres's culpability when it provided a standard instruction about other perpetrators. That instruction provides: "The evidence shows that other persons may have been involved in the commission of the crimes charged against the defendant. There may be many reasons why someone who appears to have been involved might not be a codefendant in this particular trial. You must not speculate about whether those other persons have been or will be prosecuted. Your duty is to decide whether the defendant on trial here committed the crimes charged." (CALCRIM No. 373.)

Contrary to defendant's contention, this instruction does not tell the jury not to consider Torres's culpability; rather, it merely explains that the jury must not speculate about why he was not charged in this particular trial. We see no basis to conclude that the jury was misled by this instruction. We therefore reject defendant's claim of instructional error.

Defendant also argues that she suffered cumulative prejudice from the various errors she argues. Because we have not found multiple individual errors, we reject this contention.

## DISPOSITION

The judgment is affirmed.

21

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

*People v. Robles* (A170693)